1   LAWYERS FOR CLEAN WATER, INC.
2   Daniel Cooper (Bar No. 153576)
       Email:  daniel@lawyersforcleanwater.com
3   Caroline Koch (Bar No. 266068)
4        Email:  caroline@lawyersforcleanwater.com
  1004-A O'Reilly Avenue
5   San Francisco, California 94129
6   Telephone:  (415) 440-6520
  Facsimile:  (415) 440-4155
7
  *Attorneys for Plaintiffs*
8   INLAND EMPIRE WATERKEEPER and ORANGE COUNTY COASTKEEPER

9   *Additional Plaintiffs' Counsel Listed On Next Page*
10

11            **UNITED STATES DISTRICT COURT**
           **CENTRAL DISTRICT OF CALIFORNIA**
12

13   INLAND EMPIRE WATERKEEPER, a    Civil Case No. **ED CV 14 ☐ 00072 JGB (DTBx)**
  program of ORANGE COUNTY
14   COASTKEEPER; ORANGE COUNTY
15   COASTKEEPER, a California non-profit    **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**
  corporation,
16
17           Plaintiffs,
      vs.                    **COPY**
18
19   BURRTEC WASTE GROUP, INC., a    **(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)**
  California corporation; BURRTEC WASTE
20   INDUSTRIES, INC., a California
  corporation; MOUNTAIN DISPOSAL
21   SERVICES, INC., a California corporation,
22
23          Defendants.
24
25
26
27
28

INLAND EMPIRE WATERKEEPER
Colin Kelly (Bar No. 266956)
        Email:  colin@iewaterkeeper.org
6876 Indiana Avenue, Suite D
Riverside, California 92506
Telephone:  (951) 530-8823
Facsimile:  (951) 530-8824


ORANGE COUNTY COASTKEEPER
Colin Kelly (Bar No. 266956)
        Email:  colin@coastkeeper.org
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626
Telephone:  (714) 850-1965
Facsimile:  (714) 850-1592

Inland Empire Waterkeeper and Orange County Coastkeeper (collectively "Waterkeeper" or "Plaintiffs"), by and through their counsel, hereby allege:

## I.      JURISDICTION AND VENUE

1.      This is a civil suit brought under the citizen suit enforcement provision of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"). *See* 33 U.S.C. § 1365. This Court has subject matter jurisdiction over the parties and this action pursuant to 33 U.S.C. § 1365(a)(1) and 28 U.S.C. §§ 1331 and 2201 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States).

2.      On 8 October 2013, Waterkeeper issued a sixty (60) day notice letter of intent to sue ("Notice Letter") to Mountain Disposal Services, Inc., Burrtec Waste Industries, Inc., and Burrtec Waste Group, Inc. (collectively "Defendants") for their violations of the Clean Water Act and California's Permit for Discharges of Stormwater Associated with Industrial Activities. The Notice Letter was also sent to the registered agent for Defendants, as required by 40 C.F.R. § 135.2(a)(1). Finally, the Notice Letter was sent to the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IX, the Executive Director of the State Water Resources Control Board ("State Board"), and the Executive Officer of the Regional Water Quality Control Board, Santa Ana Region ("Regional Board") as required by the CWA. 40 C.F.R. § 135.2(a)(1). The Notice Letter is attached hereto as Exhibit A and is incorporated herein by reference.

3.      More than sixty (60) days have passed since the Notice Letter was served on Defendants and the State and Federal agencies. Waterkeeper is informed and believes, and thereon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting an action to redress the violations alleged in this complaint. *See* 33 U.S.C. § 1365(b)(1)(B). This action is not barred by any prior administrative penalty under Section 309(g) of the CWA. 33 U.S.C. § 1319(g).

4.      Venue is proper in the Central District of California pursuant to Section

1   505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the sources of the violations are

2   located within this judicial district.

3   **II.   INTRODUCTION**

4       5.    This Complaint seeks relief for Defendants' substantive and procedural

5   violations of California's Permit for Discharges of Stormwater Associated with Industrial

6   Activities (National Pollution Discharge Elimination System General Permit No.

7   CAS000001, State Water Resources Control Board Water Quality Order No. 92-12-

8   DWQ, as amended by Order No. 97-03-DWQ) (hereinafter "Storm Water Permit")

9   resulting from their operations at 988 North Waterman Canyon Road, Crestline,

10  California 92325 ("Mountain Disposal Facility").

11      6.    Waterkeeper specifically alleges that Defendants' discharges of pollutants

12  from the Mountain Disposal Facility into waters of the United States; violations of the

13  filing, monitoring and reporting, and best management practice requirements; and

14  violations of other procedural and substantive requirements of the Storm Water Permit

15  and the CWA are ongoing and continuous.

16      7.    With every storm event, hundreds of millions of gallons of polluted

17  rainwater, originating from industrial operations such as the Mountain Disposal Facility,

18  pour into area surface waters. The consensus among agencies and water quality

19  specialists is that storm water pollution accounts for more than half of the total pollution

20  entering the marine and river environments each year. Surface waters are ecologically

21  sensitive areas and, although pollution and habitat destruction have drastically diminished

22  once-abundant and varied fisheries, surface waters are still essential habitat for dozens of

23  fish and bird species as well as macro-invertebrate and invertebrate species. Storm water

24  contaminated with sediment, heavy metals, and other pollutants harm the special

25  aesthetic and recreational significance that surface waters have for people in surrounding

26  communities. Public use of area surface waters for water contact sports exposes many

27  people to toxic metals and other contaminants in storm water and non-storm water

28  discharges. Non-contact recreational and aesthetic opportunities, such as wildlife

Complaint            4

1  observation, are also impaired by polluted discharges to those waters.

2  **III.    PARTIES**

3    **A.    Inland Empire Waterkeeper and Orange County Coastkeeper.**

4    8.    Inland Empire Waterkeeper is a program of Orange County Coastkeeper.

5  Inland Empire Waterkeeper's office is located at 6876 Indiana Avenue, Suite D,

6  Riverside, California 92506.

7    9.    Orange County Coastkeeper is a non-profit public benefit corporation

8  organized under the laws of the State of California. Orange County Coastkeeper's office

9  is located at 3151 Airway Avenue, Suite F-110, Costa Mesa, California 92626.

10    10.    Together, Inland Empire Waterkeeper and Orange County Coastkeeper have

11  over 2,000 members who live and/or recreate in and around the Santa Ana River

12  watershed. Waterkeeper is dedicated to the preservation, protection, and defense of the

13  environment, wildlife, and natural resources of local surface waters. To further these

14  goals, Waterkeeper actively seeks Federal and State agency implementation of the Clean

15  Water Act, and, where necessary, directly initiates enforcement actions on behalf of itself

16  and others.

17    11.    Waterkeeper members use and enjoy the Santa Ana River and its tributaries

18  for fishing, boating, swimming, bird watching, picnicking, viewing wildlife, sailing,

19  kayaking, hiking, and engaging in scientific study, including monitoring activities.

20    12.    Discharges of polluted storm water and non-storm water from the Mountain

21  Disposal Facility degrade water quality and harm aquatic life in the Santa Ana River and

22  its tributaries, and impair Waterkeeper's members' use and enjoyment of those waters.

23    13.    The violations of the Storm Water Permit at the Mountain Disposal Facility

24  are ongoing and continuous. Thus, the interests of Waterkeeper's members have been, are

25  being, and will continue to be adversely affected by Defendants' failure to comply with the

26  Storm Water Permit and the CWA.

27    **B.    The Mountain Disposal Facility Owners and/or Operators.**

28    14.    Waterkeeper is informed and believes, and thereon alleges, that Mountain

Complaint                                          5

1   Disposal Services, Inc. is an owner of the Mountain Disposal Facility.

2        15.    Waterkeeper is informed and believes, and thereon alleges, that Mountain

3   Disposal Services, Inc. is an operator of the Mountain Disposal Facility.

4        16.    Waterkeeper is informed and believes, and thereon alleges, that Burrtec

5   Waste Industries, Inc. is an owner of the Mountain Disposal Facility.

6        17.    Waterkeeper is informed and believes, and thereon alleges, that Burrtec

7   Waste Industries, Inc. is an operator of the Mountain Disposal Facility.

8        18.    Waterkeeper is informed and believes, and thereon alleges, that Burrtec

9   Waste Group, Inc. wholly owns Burrtec Waste Industries, Inc.

10        19.    Waterkeeper is informed and believes, and thereon alleges, that Burrtec

11   Waste Group, Inc. is an owner of the Mountain Disposal Facility.

12        20.    Waterkeeper is informed and believes, and thereon alleges, that Burrtec

13   Waste Group, Inc. is an operator of the Mountain Disposal Facility.

14        21.    Waterkeeper refers to Mountain Disposal Services, Inc., Burrtec Waste

15   Industries, Inc., and Burrtec Waste Group, Inc. collectively as the "Mountain Disposal

16   Facility Owners and/or Operators."

17        22.    Waterkeeper is informed and believes, and thereon alleges, that Mountain

18   Disposal Services, Inc. is an active corporation registered in California.

19        23.    Waterkeeper is informed and believes, and thereon alleges, that Burrtec

20   Waste Industries, Inc. is an active corporation registered in California.

21        24.    Waterkeeper is informed and believes, and thereon alleges, that Burrtec

22   Waste Group, Inc. is an active corporation registered in California.

23        25.    Waterkeeper is informed and believes, and thereon alleges, that the name

24   and address of the Registered Agent for Mountain Disposal Services, Inc. is Cole Burr,

25   9890 Cherry Avenue, Fontana, California 92335.

26        26.    Waterkeeper is informed and believes, and thereon alleges, that the name

27   and address of the Registered Agent for Burrtec Waste Industries, Inc. is Cole Burr, 9890

28   Cherry Avenue, Fontana, California 92335.

27.     Waterkeeper is informed and believes, and thereon alleges, that the name and address of the Registered Agent for Burrtec Waste Group, Inc. is Cole Burr, 9890 Cherry Avenue, Fontana, California 92335.

28.     Waterkeeper is informed and believes, and thereon alleges, that Burrtec Waste Group, Inc. and Burrtec Waste Industries, Inc. also operate four other industrial facilities located at: 9890 Cherry Avenue, Fontana, California 92335; 5455 Industrial Parkway, San Bernardino, CA 92407; 1830 Agua Mansa Road, Riverside, California, 92509; and 13373 Napa Street, Fontana, California 92335 ("Burrtec Facilities").

29.     Plaintiffs seek relief for the unlawful discharges of pollutants into waters of the United States from Defendants' activities at the Burrtec Facilities in separate complaints filed with the Court. These matters are related, as they also allege violations of the Storm Water Permit against Burrtec Waste Group, Inc. and Burrtec Waste Industries, Inc., as well as other operators of the Burrtec Facilities. Waterkeeper will file a Notice of Related Cases as soon as practicable.

## IV.     LEGAL BACKGROUND

### A.     The Clean Water Act.

30.     Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge complies with various enumerated sections of the CWA. Among other things, section 301(a) prohibits discharges not authorized by, or in violation of, the terms of a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to section 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342(b).

31.     Section 402(b) of the CWA, 33 U.S.C. § 1342(b), allows each state to administer its own EPA-approved NPDES permit program for regulating the discharge of pollutants, including discharges of polluted storm water.

32.     Section 402(b) of the CWA, 33 U.S.C. § 1342(b), establishes a framework for regulating industrial storm water discharges under the NPDES program. States with approved NPDES permit programs are authorized by section 402(b) to regulate industrial

1  storm water discharges through individual NPDES permits issued to dischargers and/or
2  through the issuance of a single, statewide, general NPDES permit applicable to all
3  industrial storm water dischargers. *See* 33 U.S.C. § 1342(b).

4       33.    In California, the State Board is charged with regulating pollutants to protect
5  California's water resources. *See* Cal. Water Code § 13001.

6       34.    The Storm Water Permit is a statewide general NPDES permit issued by the
7  State Board pursuant to section 402 of the CWA, 33 U.S.C. § 1342(b) and 40 C.F.R
8  § 123.25.

9       35.    In order to discharge storm water lawfully in California, industrial
10  dischargers must secure coverage under the Storm Water Permit and comply with its
11  terms, or obtain and comply with an individual NPDES permit.

12       36.    Violations of the Storm Water Permit are also violations of the CWA. *See*
13  Storm Water Permit, Section C(1).

14       37.    Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), provides for citizen
15  enforcement actions against any "person" who is alleged to be in violation of an "effluent
16  standard or limitation . . . or an order issued by the Administrator or a State with respect
17  to such a standard or limitation." *See* 33 U.S.C. §§ 1365(a)(i) and 1365(f).

18       38.    Mountain Disposal Services, Inc. is a "person" within the meaning of section
19  502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

20       39.    Burrtec Waste Industries, Inc. is a "person" within the meaning of section
21  502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

22       40.    Burrtec Waste Group, Inc. is a "person" within the meaning of section
23  502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

24       41.    An action for injunctive relief is authorized under section 505(a) of the
25  CWA, 33 U.S.C. § 1365(a).

26       42.    Each separate violation of the Clean Water Act subjects the violator to a
27  penalty of up to $32,500 per day per violation for violations occurring prior to 12 January
28  2009, and $37,500 per day per violation for violations occurring on and after 12 January

Complaint            8

1  2009. 33 U.S.C. §§ 1319(d) and 1365(a); Adjustment of Civil Monetary Penalties for

2  Inflation, 40 C.F.R. § 19.4.

3      43.    Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), allows

4  prevailing or substantially prevailing parties to recover litigation costs, including

5  attorneys' fees, experts' fees, and consultants' fees.

6      **B.    The Storm Water Permit's Effluent Limitations, Receiving Water

7      Limitations, and Discharge Prohibitions.**

8      44.    Effluent Limitation B(3) of the Storm Water Permit requires dischargers to

9  reduce or prevent pollutants associated with industrial activity in storm water discharges

10  through the implementation of Best Available Technology Economically Achievable

11  ("BAT") for toxic or non-conventional pollutants and Best Conventional Pollutant

12  Control Technology ("BCT") for conventional pollutants. Toxic pollutants are listed at 40

13  C.F.R. § 401.15 and include copper, lead, and zinc, among others. Conventional

14  pollutants are listed at 40 C.F.R. § 401.16 and include biological oxygen demand

15  ("BOD"), total suspended solids ("TSS"), oil and grease ("O&G"), pH, and fecal

16  coliform, among others.

17      45.    EPA's NPDES Multi-Sector General Permit for Stormwater Discharges

18  Associated With Industrial Activity ("MSGP") sets numeric benchmarks for pollutant

19  concentrations in storm water discharges ("EPA Benchmarks").

20      46.    The EPA Benchmarks provide an objective standard to determine whether a

21  facility's Best Management Practices ("BMPs") are successfully developed and/or

22  implemented. *See* MSGP Fact Sheet, at 95 (2008) *available at*

23  http://www.epa.gov/npdes/pubs/msgp2008_finalfs.pdf.

24      47.    Discharges from an industrial facility containing pollutant concentrations

25  that exceed EPA Benchmarks indicate that the facility has not successfully developed

26  and/or implemented BMPs that meet BAT for toxic pollutants and BCT for conventional

27  pollutants, in violation of Effluent Limitation B(3). *Id.*

28      48.    Receiving Water Limitation C(1) of the Storm Water Permit prohibits storm

Complaint                              9

1   water and non-storm water discharges that adversely impact human health or the

2   environment.

3          49.    Discharges with pollutant levels that exceed levels known to adversely

4   impact human health and the environment are violations of Receiving Water Limitation

5   C(1) of the Storm Water Permit.

6          50.    Receiving Water Limitation C(2) of the Storm Water Permit prohibits storm

7   water and non-storm water discharges that "cause or contribute to an exceedance of any

8   applicable water quality standard in a Statewide Water Quality Control Plan or the

9   applicable Regional Board's Basin Plan."

10         51.    Water Quality Standards ("WQS") are pollutant concentration levels

11   determined by the State Board, the various regional boards, and the EPA, to be protective

12   of the beneficial uses of the waters that receive polluted discharges. The Water Quality

13   Control Plan for the Santa Ana River Basin, California Regional Water Quality Control

14   Board, Santa Ana Region, 3rd Ed. (Rev. June 2011) ("Basin Plan"), identifies the

15   "Beneficial Uses" of water bodies in the region.

16         52.    The Beneficial Uses for Waterman Canyon Creek and the Santa Ana River

17   Reaches 1 – 5 include: Municipal and Domestic Supply; Agricultural Supply;

18   Groundwater Recharge; Water Contact Recreation; Non-contact Water Recreation; Warm

19   Freshwater Habitat; Wildlife Habitat; Rare, Threatened or Endangered Species; and Cold

20   Freshwater Habitat. *See* Basin Plan, Table 3-1.

21         53.    Discharges of pollutants at levels above WQS contribute to the impairment

22   of the Beneficial Uses of the waters receiving the discharges.

23         54.    Surface waters that cannot support the Beneficial Uses of those waters listed

24   in the Basin Plan are designated as impaired water bodies pursuant to section 303(d) of

25   the Clean Water Act, 33 U.S.C. § 1313(d).

26         55.    The 2010 303(d) List of Impaired Water Bodies identifies Reach 4 of the

27

28

1   Santa Ana River as impaired for pathogens.[1]

2         56.     Reach 3 of the Santa Ana River is impaired for copper, lead, and pathogens.

3   *Id.*

4         57.     Reach 2 of the Santa Ana River as impaired for indicator bacteria. *Id.*

5         58.     WQS applicable to dischargers covered by the Storm Water Permit include,

6   but are not limited to, those set out in the Basin Plan and the Criteria for Priority Toxic

7   Pollutants for the State of California ("CTR"), 40 C.F.R. § 131.38.

8         59.     The CTR includes numeric criteria set to protect human health and the

9   environment in the State of California.[2]

10         60.     Discharges that cause or contribute to pollutant levels in receiving waters

11   that exceed the CTR criteria, the Basin Plan, and/or other applicable WQS are violations

12   of Receiving Water Limitation C(2) of the Storm Water Permit.

13         61.     Except as otherwise authorized, Discharge Prohibition A(1) of the Storm

14   Water Permit prohibits permittees from discharging materials other than storm water

15   (non-storm water discharges) either directly or indirectly to waters of the United States.

16   Prohibited non-storm water discharges must be either eliminated or permitted by a

17   separate NPDES permit. *See* Storm Water Permit, Discharge Prohibition A(1).

18         62.     Unauthorized discharges of materials other than storm water (non-storm

19   water) are violations of Discharge Prohibition A(1) of the Storm Water Permit.

20   **C.     The Storm Water Permit's Storm Water Pollution Prevention Plan**

21           **Requirements.**

22         63.     Section A(1) and Provision E(2) of the Storm Water Permit require

23   dischargers to develop and implement a Storm Water Pollution Prevention Plan

24   ("SWPPP") that complies with the requirements of the Storm Water Permit prior to

---

25   [1] 2010 Integrated Report – All Assessed Waters, *available at*:

26   http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2010.shtml (last
    accessed on November 1, 2013).

27   [2] Water Quality Standards; Establishment of Numeric Criteria for Priority Toxic

28   Pollutants for the State of California Factsheet, EPA-823-00-008, April 2000 *available at*
    http://water.epa.gov/lawsregs/rulesregs/ctr/factsheet.cfm.

1 | commencing industrial activities.

2 |     64.    The objectives of the SWPPP are to identify and evaluate sources of

3 | pollutants associated with industrial activities that may affect the quality of storm water

4 | discharges, to identify and implement site-specific BMPs to prevent the exposure of

5 | pollutants to storm water, and to reduce or prevent the discharge of polluted storm water

6 | from industrial facilities. Storm Water Permit, Section A(2).

7 |     65.    Section A(3) of the Storm Water Permit requires a discharger to identify the

8 | members of its on-site Storm Water Pollution Prevention Team ("SWPPP Team") and to

9 | indicate each team member's responsibilities in developing, implementing and revising

10 | the SWPPP to ensure compliance with the Storm Water Permit.

11 |     66.    Section A(4) of the Storm Water Permit requires that the SWPPP include a

12 | site map that indicates specified information, including, but not limited to: the facility

13 | boundaries; storm water drainage areas and directions of flow for each drainage area; on-

14 | site surface water bodies; nearby water bodies; areas of soil erosion; municipal storm

15 | drain inlets where the facility's storm water discharges may be received; the location of

16 | the storm water collection, conveyance and discharge system; structural control measures

17 | that affect storm water discharges; an outline of all impervious areas of the facility,

18 | including paved areas, buildings, covered storage areas, and other roofed structures;

19 | locations where materials are directly exposed to precipitation; locations where

20 | significant spills or leaks have occurred; and all areas of industrial activity, including

21 | areas that are actual and potential pollutant sources.

22 |     67.    Section A(5) of the Storm Water Permit requires that the SWPPP include a

23 | list of significant materials handled and stored at the site. For each material identified on

24 | the list, the discharger must describe certain specified information, including locations

25 | where the material is typically stored, received, and handled, as well as typical quantities

26 | and frequency of the material at the facility.

27 |     68.    Section A(6)(a) of the Storm Water Permit requires that the SWPPP include

28 | a narrative description of the facility's industrial activities, associated potential pollutant

Complaint                   12

1   sources, and potential pollutants that could be discharged in storm water discharges or

2   authorized non-storm water discharges.

3       69.    Section A(6)(b) of the Storm Water Permit requires that the SWPPP include

4   a summary of all areas of industrial activities, potential pollutant sources, and potential

5   pollutants.

6       70.    Section A(7)(a) of the Storm Water Permit requires that the SWPPP include

7   a narrative assessment of all industrial activities and potential pollutant sources to

8   determine which areas of the facility are likely sources of pollutants and which pollutants

9   are likely to be present in the facility's storm water discharges.

10      71.    Section A(7)(b) of the Storm Water Permit requires that the SWPPP include

11  a summary of the areas of the facility that are likely sources of pollutants and the

12  corresponding pollutants likely to be present in storm water discharges.

13      72.    Section A(8) of the Storm Water Permit requires that the SWPPP include a

14  narrative description of the storm water BMPs to be implemented at the facility for each

15  potential pollutant and its source. BMPs shall be developed and implemented to reduce or

16  prevent pollutants in storm water discharges. Sections A(8)(a) and (b) of the Storm Water

17  Permit require dischargers to develop and implement structural and/or non-structural

18  BMPs, respectively.

19      73.    Section A(9) of the Storm Water Permit requires the discharger to evaluate

20  the SWPPP on an annual basis and revise it as necessary to ensure compliance with the

21  Storm Water Permit.

22      74.    Sections A(9)(a)-(c) of the Storm Water Permit require that the discharger

23  conduct an Annual Comprehensive Site Compliance Evaluation ("ACSCE Report") that

24  includes a review of all visual observation records, inspection reports, and sampling and

25  analysis results; a visual inspection of all potential pollutant sources for evidence of, or

26  the potential for, pollutants entering the drainage system; a review and evaluation of all

27  BMPs to determine whether the BMPs are adequate, properly implemented, and

28  maintained, or whether additional BMPs are needed; and a visual inspection of

Complaint                                        13

1  equipment needed to implement the SWPPP.

2       75.    Section A(9)(d) of the Storm Water Permit requires that the ACSCE Report

3  include an identification of personnel performing the evaluation, the date(s) of the

4  evaluation(s), necessary SWPPP revisions, a schedule for implementing SWPPP

5  revisions, any instances of non-compliance and the corrective actions taken, and a

6  certification that the discharger is in compliance with the Storm Water Permit. If

7  certification of compliance cannot be provided, the discharger must explain in the

8  ACSCE Report why the facility is not in compliance with the Storm Water Permit. The

9  ACSCE Report shall be submitted as part of the Annual Report specified in Section

10  B(14) of the Storm Water Permit.

11       76.    Section A(10) of the Storm Water Permit requires SWPPP revision in several

12  scenarios, including upon request by the Regional Board or local agency, and upon

13  changes in the facility's industrial activities which (i) may significantly increase the

14  levels of pollutants in discharges, (ii) cause a new area of industrial activity at the facility

15  to be exposed to storm water, or (iii) begin a new industrial activity that may introduce a

16  new pollutant. SWPPP revisions and implementation under this section should be timely

17  and complete within ninety (90) days of a facility operator's determination that the

18  SWPPP is in violation of any requirements of the Storm Water Permit.

19       77.    Section A(10)(b) of the Storm Water Permit requires a facility to submit a

20  SWPPP revision upon notice from the Regional Board or a local agency that the facility

21  is not in compliance with the Storm Water Permit.

22       78.    Section A(10)(d) of the Storm Water Permit requires a facility to revise and

23  implement its SWPPP within ninety (90) days after a facility operator determines that its

24  SWPPP is not in compliance with the Storm Water Permit.

25      **D.    The Storm Water Permit's Monitoring and Reporting Requirements.**

26       79.    Provision E(3) and Section B(1) of the Storm Water Permit require

27  dischargers to develop and implement a Monitoring and Reporting Program ("M&RP")

28  when industrial activities commence.

Complaint                 14

80.     The objectives of the M&RP are to ensure that BMPs have been adequately developed, implemented, and revised if necessary, and to ensure that storm water and non-storm water discharges are in compliance with the Storm Water Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. Storm Water Permit, Sections B(2)(a) and B(2)(b).

81.     The M&RP aids in the implementation and revision of the SWPPP and measures the effectiveness of BMPs to prevent or reduce pollutants in storm water discharges. Storm Water Permit, Sections B(2)(c) and B(2)(d).

82.     Section B(2)(d) of the Storm Water Permit requires that the M&RP be revised as necessary to ensure compliance with the Storm Water Permit.

83.     Section B(3) of the Storm Water Permit requires a discharger to conduct visual observations of all drainage areas within the facility for the presence of authorized and unauthorized non-storm water discharges. Observations under this section must occur during daylight hours, on days with no storm water discharges, and during scheduled facility operating hours.

84.     Section B(4) of the Storm Water Permit requires a discharger to conduct visual observations of storm water discharges during at least one storm event per month during the Wet Season (October 1 – May 1) in the first hour of discharge at each discharge location. Observations under this section must take place during daylight hours, when the discharge is preceded by at least three (3) days without storm water discharges, and during scheduled facility operating hours.

85.     Both Sections B(3) and B(4) of the Storm Water Permit require a discharger to document and record visual observations. Records of observation must describe the presence of any floating or suspended materials, O&G, discolorations, turbidity, odor, and the source of any pollutants observed during the visual observations. Dischargers must maintain records of visual observations that include the observation date, locations observed, and responses taken to eliminate unauthorized non-storm water discharges and to reduce or prevent pollutants from contacting non-storm water and storm water

1    discharges. Furthermore, Sections B(3) and B(4) require a discharger to revise its facility

2    SWPPP in order to rectify any instances of noncompliance observed during visual

3    observations.

4         86.    Sections B(5) and (7) of the Storm Water Permit require a discharger to

5    visually observe and collect samples of storm water discharges from all locations where

6    storm water is discharged.

7         87.    Section B(5)(a) of the Storm Water Permit requires a discharger to collect

8    storm water samples during the first hour of discharge from the first storm event of the

9    Wet Season and at least one other storm event during the Wet Season. All storm water

10   discharge locations must be sampled. *See* Storm Water Permit, Section B(5)(a). Facility

11   operators that do not collect samples from the first storm event of the Wet Season are still

12   required to collect samples from two other storm events of the Wet Season and must

13   explain in the Annual Report why the first storm event was not sampled. *Id.*

14        88.    Section B(5)(b) of the Storm Water Permit requires that sampling conducted

15   pursuant to the Storm Water Permit occur during scheduled facility operating hours that

16   are preceded by at least three (3) working days without storm water discharge.

17        89.    Section B(5)(c)(i) of the Storm Water Permit requires dischargers to analyze

18   each sample for pH, specific conductance ("SC"), TSS, and total organic carbon

19   ("TOC"). A discharger may elect to analyze for O&G instead of TOC.

20        90.    Section B(5)(c)(ii) of the Storm Water Permit requires dischargers to

21   analyze each sample for toxic chemicals and other pollutants likely to be present in the

22   storm water discharged from the facility in significant quantities.

23        91.    Section B(12) of the Storm Water Permit provides for Sampling and Analysis

24   Exemptions and Reductions. In order to qualify for an exemption or reduction in a

25   facility's sampling and analysis requirements, the facility must submit the appropriate

26   certifications and required documentation to the Regional Water Board prior to the

27   beginning of the Wet Season on 1 October each year. A facility must resubmit

28   certifications and documentation annually in order to extend a sampling exemption or

Complaint                                    16

1  reduction through the subsequent year. Facilities that no longer qualify for a sampling

2  exemption or reduction must immediately comply with Section B(5) of the Storm Water

3  Permit.

4       92.    Section B(14) of the Storm Water Permit requires that dischargers submit an

5  Annual Report to the applicable regional board by 1 July of each year. The Annual

6  Report must include a summary of visual observations and sampling results, an

7  evaluation of the visual observations and sampling and analysis results, laboratory

8  reports, the ACSCE Report specified in Section A(9), an explanation of why a facility did

9  not implement any activities required by the Storm Water Permit, and the records

10 specified in Section B(13).

11      93.    Section C(9) of the Storm Water Permit requires that all reports,

12 certifications, and other information required by the Storm Water Permit or requested by

13 a regional board be signed by an authorized representative of the facility's operators.

14      94.    Section C(10) of the Storm Water Permit requires any signatory subject to

15 Section C(9) to make the following certification: "I certify under penalty of law that this

16 document and all attachments were prepared under my direction or supervision in

17 accordance with a system designed to ensure that qualified personnel properly gather and

18 evaluate the information submitted. Based on my inquiry of the person or persons who

19 manage the system, or those persons directly responsible for gathering the information,

20 the information submitted is to the best of my knowledge and belief, true, accurate, and

21 complete. I am aware that there are significant penalties for submitting false information,

22 including the possibility of fine and imprisonment for knowing violations."

23      95.    Section C(11)(b) of the Storm Water Permit requires facility operators to

24 give advance notice to the regional board or local storm water agency of anticipated

25 noncompliance with the Storm Water Permit.

26      96.    Section C(11)(d) of the Storm Water Permit requires facility operators to

27 report any incidence of noncompliance with the Storm Water Permit at the time

28 monitoring reports are submitted. Reports of noncompliance must contain: (1) a

1  description of noncompliance and its cause; (2) the period of noncompliance, including

2  exact dates and times, and if the noncompliance has not been corrected, the anticipated

3  time it is expected to continue; and (3) steps taken or planned to reduce a prevent

4  recurrence of the noncompliance.

5  **V.    FACTUAL BACKGROUND**

6      **A.    Mountain Disposal Facility's Storm Water Permit Coverage.**

7      97.    Waterkeeper is informed and believes, and thereon alleges, that the State

8  Board Storm Water Multiple Application & Report Tracking System ("SMARTS")

9  shows that the State Board confirmed receipt of a Notice of Intent to Comply with the

10  Terms of the General Permit to Discharge Storm Water Associated with Industrial

11  Activity ("NOI") for the Mountain Disposal Facility on 17 November 1992 ("1992 NOI

12  Receipt").

13      98.    Waterkeeper is informed and believes, and thereon alleges, that the

14  Mountain Disposal Facility Owners and/or Operators submitted a second NOI to the

15  Regional Board on 9 July 2012 ("2012 NOI").

16      99.    The 2012 NOI identifies the Facility name and location as "Mountain

17  Disposal Service, 988 Old Waterman Canyon Road, Crestline."

18      100.   The 2012 NOI identifies the owner/operator of the Mountain Disposal

19  Facility as "Mountain Disposal Service."

20      101.   The 2012 NOI identifies the Facility operator as "Mountain Disposal

21  Service, 17080 Stoddard Wells Rd, Victorville, CA 92394."

22      102.   Information available to Waterkeeper indicates that SMARTS identifies the

23  Facility name and location as "Mountain Disposal Service, 988 Old Waterman Canyon

24  Road, Crestline, California, 92325."

25      103.   Information available to Waterkeeper indicates that SMARTS lists the

26  Mountain Disposal Facility's coverage under the Storm Water Permit as "Active."

27      104.   The 1992 NOI Receipt and SMARTS list the Mountain Disposal Facility

28  Waste Discharger Identification Number ("WDID") as 8 36I000650.

Complaint                                    18

105.   The 2012 NOI identifies the Standard Industrial Classification ("SIC") code for the Mountain Disposal Facility as 4212 (Motor Freight Transportation and Warehousing).

106.   For facilities classified as SIC code 4212, the Storm Water Permit requires permit coverage for the portions of the facility involved in vehicle maintenance (including repair, rehabilitation, lubrication, painting and fueling), and other operations associated with industrial activity. Storm Water Permit, Attachment 1, Section 8.

107.   Waterkeeper is informed and believes, and thereon alleges, that these regulated industrial activities are conducted at locations throughout the entire Mountain Disposal Facility and that the entire Mountain Disposal Facility requires Storm Water Permit coverage.

108.   Waterkeeper is informed and believes, and thereon alleges, that to the extent industrial activities relating to SIC code 4212 are not conducted at locations throughout the entire Mountain Disposal Facility, the entire Mountain Disposal Facility requires Storm Water Permit coverage because there are no BMPs at the Mountain Disposal Facility that separate the storm water flows from portions of the Mountain Disposal Facility where non-regulated activities may occur from storm water flows from the regulated industrial activities.

109.   Waterkeeper is informed and believes, and thereon alleges, that the Mountain Disposal Facility is approximately 0.8 acres in size.

110.   The 2012 NOI indicates that the Mountain Disposal Facility owners and/or operators applied for Storm Water Permit coverage for one (1) acre of the Facility.

**B.     Industrial Activities at the Mountain Disposal Facility.**

111.   Waterkeeper is informed and believes, and thereon alleges, that the following industrial activities are conducted at the Mountain Disposal Facility: storage of materials including, but not limited to, oil, waste oil, paint, solvents, detergents, and diesel; vehicle washing; vehicle fueling; truck maintenance; truck parking; loading and unloading materials; and collection bin storage and maintenance.

112.   Waterkeeper is informed and believes, and thereon alleges, that hazardous wastes such as diesel, No. 2 fuel oil, motor oil, gear oil, hydraulic fluid, waste oil, solvents, paints, degreasers, antifreeze, and electronic waste, are generated at the Mountain Disposal Facility.

113.   Waterkeeper is informed and believes, and thereon alleges, that hazardous wastes such as diesel, No. 2 fuel oil, motor oil, gear oil, hydraulic fluid, waste oil, solvents, paints, degreasers, antifreeze, and electronic waste, are stored at the Mountain Disposal Facility.

114.   Waterkeeper is informed and believes, and thereon alleges, that industrial activities at the Mountain Disposal Facility are conducted outdoors and without cover.

115.   Waterkeeper is informed and believes, and thereon alleges, that outdoor industrial activities at the Mountain Disposal Facility are conducted without secondary containment or other measures to prevent polluted storm water discharges from the Facility.

116.   Waterkeeper is informed and believes, and thereon alleges, that sources of pollutants at the Mountain Disposal Facility include, but are not limited to: truck and equipment parking, washing, and maintenance areas; solid waste collection bin storage areas; a fueling station; hazardous material storage areas; waste collection, sorting and storage areas; loading and unloading areas; driveway areas; office building(s); and on-site material handling equipment.

117.   Waterkeeper is informed and believes, and thereon alleges, that the pollutants associated with operations at the Mountain Disposal Facility include, but are not limited to: TSS; SC; pH; O&G; heavy metals such as aluminum, lead, copper, and zinc; pathogens; nutrients; and fugitive and other dust, dirt, and debris.

118.   Waterkeeper is informed and believes, and thereon alleges, that the Mountain Disposal Facility Owners and/or Operators have failed and continue to fail to adequately develop and/or implement BMPs to prevent the exposure of pollutants and their sources to storm water flows at the Mountain Disposal Facility.

119.   Waterkeeper is informed and believes, and thereon alleges, that the Mountain Disposal Facility Owners and/or Operators have failed and continue to fail to adequately develop and/or implement BMPs sufficient to prevent polluted storm water from discharging from the Mountain Disposal Facility.

120.   Waterkeeper is informed and believes, and thereon alleges, that the Mountain Disposal Facility Owners and/or Operators have failed and continue to fail to adequately develop and/or implement required BMPs to prevent prohibited non-storm water discharges from the Mountain Disposal Facility.

121.   Waterkeeper is informed and believes, and thereon alleges, that the Mountain Disposal Facility Owners' and/or Operators' failure to properly address pollutants and their sources results in the discharge of polluted storm water and/or non-storm water from the Mountain Disposal Facility.

**C.     Discharge Locations at the Mountain Disposal Facility.**

122.   Waterkeeper is informed and believes, and thereon alleges, that the Mountain Disposal Facility SWPPP states that there is one discharge point at the Facility located near the southern end of the Facility along Waterman Canyon Road.

123.   Waterkeeper is informed and believes, and thereon alleges, that the 2011-2012 Annual Report for the Facility indicates the presence of two discharge points at the Facility, but does not identify the locations of these discharge points.

124.   Waterkeeper is informed and believes, and thereon alleges, that the Mountain Disposal Facility SWPPP states that visual inspections shall occur at outfall points N°1 and N°2, but the SWPPP site map does not indicate the location of outfall points N°1 and N°2.

125.   Waterkeeper is informed and believes, and thereon alleges, that due to the lack of curbs or other storm water conveyance features at the Facility, storm water may discharge from the Facility at any point along the northeastern, eastern, and southern boundaries of the Facility.

126.   Waterkeeper is informed and believes, and thereon alleges, that these other

1   discharge points have not been identified as discharge points by the Mountain Disposal

2   Facility Owners and/or Operators.

3       127.  Waterkeeper is informed and believe, and thereon alleges that there is at

4   least one, but may be more, discharge point at the Facility.

5       128.  Waterkeeper is informed and believes, and thereon alleges, that the

6   Mountain Disposal Facility Owners and/or Operators fail to collect storm water samples

7   from all discharge points at the Facility.

8       **D.    The Mountain Disposal Facility's Discharges to Receiving Waters.**

9       129.  Waterkeeper is informed and believes, and thereon alleges, that discharges

10  from the Mountain Disposal Facility flow to Waterman Canyon Creek, East Twin Creek,

11  Warm Creek, and the Santa Ana River (collectively "the Receiving Waters").

12      130.  Waterkeeper is informed and believes, and thereon alleges, that each of the

13  Receiving Waters is a federally protected water of the United States, and/or a tributary to

14  a traditional navigable water.

15      131.  Waterkeeper is informed and believes, and thereon alleges, that polluted

16  storm water and non-storm water discharges from the Mountain Disposal Facility to the

17  Receiving Waters.

18      132.  Waterkeeper is informed and believes, and thereon alleges, that polluted

19  discharges from the Mountain Disposal Facility contribute to the degradation of the Santa

20  Ana River, an impaired surface water, and adversely impact human health and the

21  environment.

22      133.  Waterkeeper is informed and believes, and thereon alleges, that samples of

23  storm water discharges collected at the Mountain Disposal Facility contain levels of

24  pollutants, including copper, lead, aluminum, zinc, pathogens and O&G, in violation of

25  the Storm Water Permit's Effluent Limitations and Receiving Water Limitations.

26      134.  Exceedances of EPA Benchmarks indicate that a facility has not developed

27  and/or implemented adequate BMPs to achieve compliance with BAT/BCT standards, as

28  required by the Storm Water Permit Effluent Limitation B(3) and the Clean Water Act.

1     135. Waterkeeper is informed and believes, and thereon alleges, that the Mountain

2   Disposal Facility Owners and/or Operators have not developed or implemented sufficient

3   BMPs to reduce the levels of pollutants in the Mountain Disposal Facility storm water

4   discharges to levels that do not adversely impact human health or the environment, as

5   required by Receiving Water Limitation C(1).

6     136. Waterkeeper is informed and believes, and thereon alleges, that the Mountain

7   Disposal Facility Owners and/or Operators have not developed or implemented sufficient

8   BMPs to reduce the levels of pollutants in the Mountain Disposal Facility storm water

9   discharges to levels that do not cause or contribute to exceedances of applicable WQS, as

10  required by Receiving Water Limitation C(2).

11    137. Waterkeeper is informed and believes, and thereon alleges, that during every

12  significant rain event or any other storm water discharge that has occurred at the

13  Mountain Disposal Facility since 20 October 2008 through the present, Mountain

14  Disposal Facility Owners and/or Operators have discharged and continue to discharge

15  storm water from the Mountain Disposal Facility that contains contaminants at levels that

16  violate the prohibitions and limitations set forth in the Storm Water Permit.

17    **E. Defendants' Prohibited Non-Storm Water Discharges.**

18    138. Waterkeeper is informed and believes, and thereon alleges, that water is used

19  for dust control at the Mountain Disposal Facility.

20    139. Waterkeeper is informed and believes, and thereon alleges, that water used

21  for dust control at the Mountain Disposal Facility results in non-storm water discharges

22  from the Facility to the Receiving Waters.

23    140. Waterkeeper is informed and believes, and thereon alleges, that water is used

24  for truck, vehicle, equipment, and/or parts washing at the Mountain Disposal Facility.

25    141. Waterkeeper is informed and believes, and thereon alleges, that water used

26  for truck, vehicle, equipment, and/or parts washing at the Mountain Disposal Facility

27  results in non-storm water discharges from the Facility to the Receiving Waters.

28    142. Waterkeeper is informed and believes, and thereon alleges, that BMPs have

Complaint         23

1  not been developed and/or implemented to prevent non-storm water from discharging
2  from the Mountain Disposal Facility.

3      143.  Waterkeeper is informed and believes, and thereon alleges, that prohibited
4  non-storm water discharges from the Mountain Disposal Facility to the Receiving Waters
5  in violation of Discharge Prohibition A(1).

6      **F.    Defendants' Failure to Comply with the Storm Water Permit's SWPPP**
7          **Requirements.**

8      144.  Waterkeeper is informed and believes, and thereon alleges, that the Mountain
9  Disposal Facility Owners and/or Operators failed and continue to fail to list SWPPP team
10 members' responsibilities, as required by Section A(3) of the Storm Water Permit.

11     145.  Waterkeeper is informed and believes, and thereon alleges, that the Mountain
12 Disposal Facility site map does not indicate, among other issues, on-site surface water
13 bodies, portions of the drainage area impacted by run-on from surrounding areas, areas of
14 soil erosion, nearby water bodies, the location of the storm water collection and
15 conveyance system, locations where materials are directly exposed to precipitation,
16 and/or all areas of industrial activity, as required by Section A(4) of the Storm Water
17 Permit.

18     146.  Waterkeeper is informed and believes, and thereon alleges, that the Mountain
19 Disposal Facility SWPPP does not include a list of significant materials handled and
20 stored on site, or additional information related to significant materials, including the
21 locations where each material is stored, received, shipped, and/or handled, as required by
22 Section A(5) of the Storm Water Permit.

23     147.  Waterkeeper is informed and believes, and thereon alleges, that the Mountain
24 Disposal Facility SWPPP does not include a narrative description of all industrial
25 activities and processes conducted on site, as required by Section A(6) of the Storm
26 Water Permit.

27     148.  Waterkeeper is informed and believes, and thereon alleges, that the Mountain
28 Disposal Facility SWPPP does not include an assessment of all potential sources of

Complaint                                24

1    pollutants at the Facility, as required by Section A(7) of the Storm Water Permit.

2        149.  Waterkeeper is informed and believes, and thereon alleges, that the Mountain

3    Disposal Facility SWPPP does not link its described BMPs to specific potential pollutant

4    sources, as required by Section A(8) of the Storm Water Permit.

5        150.  Waterkeeper is informed and believes, and thereon alleges, that the Mountain

6    Disposal Facility SWPPP does not describe BMPs developed and/or implemented to

7    address potential pollutants emanating from electronic or other waste storage activities

8    conducted at the Facility, as required by Section A(8) of the Storm Water Permit.

9        151.  Waterkeeper is informed and believes, and thereon alleges, that the Mountain

10   Disposal Facility SWPPP does not describe BMPs developed and/or implemented for

11   non-storm water discharges, including dust control and truck, vehicle, and/or equipment

12   washing, as required by Section A(8) of the Storm Water Permit.

13       152.  Waterkeeper is informed and believes, and thereon alleges, that the Mountain

14   Disposal Facility Owners and/or Operators have failed and continue to fail to adequately

15   develop, implement, and/or revise the Facility SWPPP, in violation of Section A and

16   Provision E(2) of the Storm Water Permit and the Clean Water Act.

17       **G.   Defendants' Failure to Comply with the Storm Water Permit's**
         **Monitoring and Sampling Requirements.**
18

19       153.  Waterkeeper is informed and believes, and thereon alleges, that the Mountain

20   Disposal Facility Owners and/or Operators failed and continue to fail to conduct quarterly

21   visual observations of the Facility's authorized and unauthorized non-storm water

22   discharges, as required by Section B(3) of the Storm Water Permit.

23       154.  Waterkeeper is informed and believes, and thereon alleges, that the Mountain

24   Disposal Facility Owners and/or Operators failed and continue to fail to conduct quarterly

25   visual observations of the Facility's authorized and unauthorized non-storm water

26   discharges during daylight hours, as required by Section B(3) of the Storm Water Permit.

27       155.  Waterkeeper is informed and believes, and thereon alleges, that the Mountain

28   Disposal Facility Owners and/or Operators failed and continue to fail to adequately

Complaint                                    25

1  document and report visual observations of non-storm water discharges, as required by

2  Section B(3) of the Storm Water Permit.

3      156.  Waterkeeper is informed and believes, and thereon alleges, that the Mountain

4  Disposal Facility Owners and/or Operators have failed and continue to fail to conduct

5  monthly visual observations of storm water discharges during the Wet Season from all

6  discharge points and during the first hour of discharge, as required by Section B(4)(a) of

7  the Storm Water Permit.

8      157.  Waterkeeper is informed and believes, and thereon alleges, that the Mountain

9  Disposal Facility Owners and/or Operators failed and continue to fail to adequately

10  document and report visual observations of storm water discharges, as required by

11  Section B(4)(a) of the Storm Water Permit.

12      158.  Waterkeeper is informed and believes, and thereon alleges, that the Mountain

13  Disposal Facility Owners and/or Operators failed and continue to fail to collect two (2)

14  storm water samples from each of the Mountain Disposal Facility discharge points during

15  each Wet Season, as required by Section B(5)(a) of the Storm Water Permit.

16      159.  Waterkeeper is informed and believes, and thereon alleges, that the Mountain

17  Disposal Facility Owners and/or Operators failed and continue to fail to collect storm

18  water samples during the first storm event of the Wet Season, as required by Section

19  B(5)(a) of the Storm Water Permit.

20      160.  Waterkeeper is informed and believes, and thereon alleges, that the Mountain

21  Disposal Facility Owners and/or Operators failed and continue to fail to analyze all storm

22  water samples collected for all pollutants likely to be present in storm water discharges in

23  significant quantities, including but not limited to copper, aluminum, iron, zinc, and

24  pathogens, as required by Section B(5)(c) of the Storm Water Permit.

25      161.  Waterkeeper is informed and believes, and thereon alleges, that the Mountain

26  Disposal Facility Owners and/or Operators have failed and continue to fail to adequately

27  develop, implement, and/or revise the Facility M&RP, in violation of Section B and

28  Provision E(3) of the Storm Water Permit and the Clean Water Act.

1

2

**H.    Defendants' Failure to Comply with the Storm Water Permit's Reporting Requirements.**

3

4

5

162.   Waterkeeper is informed and believes, and thereon alleges, that the Mountain Disposal Facility Owners and/or Operators failed and continue to fail to submit Annual Reports that comply with Section B(14) of the Storm Water Permit.

6

7

8

9

163.   Waterkeeper is informed and believes, and thereon alleges, that the Mountain Disposal Facility Owners and/or Operators failed and continue to fail to submit Annual Reports signed by a duly authorized representative, as required by Sections B(14), C(9), and C(10).

10

11

12

13

14

15

164.   Waterkeeper is informed and believes, and thereon alleges, that the Mountain Disposal Facility Owners' and/or Operators' certifications of compliance with the Storm Water Permit in the Facility's Annual Reports are erroneous because the Facility Owners and/or Operators have not developed and/or implemented the required BMPs to achieve compliance with the Storm Water Permit, as required by Sections A and B of the Storm Water Permit.

16

17

18

19

20

165.   Waterkeeper is informed and believes, and thereon alleges, that the Mountain Disposal Facility Owners' and/or Operators' certifications of compliance with the Storm Water Permit in the Facility's Annual Reports are erroneous because the Facility Owners and/or Operators have not revised the Facility SWPPP to achieve compliance with the Storm Water Permit, as required by Sections A(9) and A(10) of the Storm Water Permit.

21

22

23

24

25

166.   Waterkeeper is informed and believes, and thereon alleges, that the Mountain Disposal Facility Owners' and/or Operators' certifications of compliance with the Storm Water Permit in the Facility's Annual Reports are erroneous because the Facility Owners and/or Operators have not revised the Facility M&RP to achieve compliance with the Storm Water Permit, as required by Section B(2) of the Storm Water Permit.

26

27

28

167.   Waterkeeper is informed and believes, and thereon alleges, that the Mountain Disposal Facility Owners and Operators failed and continue to fail to include in the Facility's Annual Reports descriptions of steps taken or planned by the Mountain

1  Disposal Facility Owners and/or Operators to prevent recurrence of noncompliance with

2  the Storm Water Permit, as required by Section C(11) of the Storm Water Permit.

3      168.  Waterkeeper is informed and believes, and thereon alleges, that the

4  Mountain Disposal Facility Owners' and/or Operators' erroneously state in the Facility's

5  Annual Reports that the Facility was in compliance with the Storm Water Permit when it

6  was not, in violation of Sections B and C(11) of the Storm Water Permit.

7      169.  Waterkeeper is informed and believes, and thereon alleges, that the

8  Mountain Disposal Facility Owners' and/or Operators' Annual Reports failed and

9  continue to fail to provide the explanations required by the Annual Report when there is

10  non-compliance with the Storm Water Permit's terms, in violation of Sections B and

11  C(11) of the Storm Water Permit.

12      170.  Waterkeeper is informed and believes, and thereon alleges, that Mountain

13  Disposal Facility Owners and Operators failed and continue to fail to describe in the

14  Facility's Annual Reports those violations resulting in the Facility's noncompliance with

15  the Storm Water Permit, as required by Section C(11) of the Storm Water Permit.

16      171.  Waterkeeper is informed and believes, and thereon alleges, that the Mountain

17  Disposal Facility Owners and/or Operators have failed and continue to fail to include a

18  summary or evaluation of their visual observations and sampling and analysis results in

19  the Facility's Annual Reports, as required by Section B(14) of the Storm Water Permit.

20      172.  Waterkeeper is informed and believes, and thereon alleges, that the Mountain

21  Disposal Facility Owners and/or Operators failed and continue to fail to provide in the

22  Facility's Annual Reports information documenting the dates, locations, times,

23  appearance of discharges, and other information related to visual observations of

24  discharge points, as required by Sections B(3) and B(4) of the Storm Water Permit.

25      173.  Waterkeeper is informed and believes, and thereon alleges, that the Mountain

26  Disposal Facility Owners and/or Operators failed and continue to fail to include complete

27  ACSCE Reports in the Facility's Annual Reports, as required by Section A(9) of the

28  Storm Water Permit.

1    174.   Waterkeeper is informed and believes, and thereon alleges, that the Mountain

2  Disposal Facility Owners and/or Operators failed and continue to fail to submit the

3  Facility's Annual Reports to the Regional Board by 1 July, as required by Section B(14)

4  of the Storm Water Permit.

5    175.   Waterkeeper is informed and believes, and thereon alleges, that the Mountain

6  Disposal Facility Owners and/or Operators have failed and continue to fail to submit

7  Annual Reports that contain explanations of their failures to implement activities required

8  by the Storm Water Permit, as required by Section B(14) of the Storm Water Permit.

9    176.   Waterkeeper is informed and believes, and thereon alleges, that the Mountain

10  Disposal Facility Owners and/or Operators have failed and continue to fail to submit

11  reports identifying what additional BMPs will be implemented to achieve water quality

12  standards when storm water discharges from the Facility exceeded the Storm Water

13  Permit Receiving Water Limitations, as required by Receiving Water Limitations C(3)

14  and C(4) of the Storm Water Permit.

15  **VI.    CLAIMS FOR RELIEF**

16  ### FIRST CAUSE OF ACTION

17  **Defendants' Discharges of Contaminated Storm Water in Violation of the
Storm Water Permit's Effluent Limitation B(3) and the Clean Water Act.**

18

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

19

20    177.   Waterkeeper incorporates the allegations contained in the above paragraphs

21  as though fully set forth herein.

22    178.   Waterkeeper is informed and believes, and thereon alleges, that storm water

23  containing levels of pollutants that does not achieve compliance with BAT/BCT

24  standards has discharged and continues to discharge from the Mountain Disposal Facility.

25    179.   Waterkeeper is informed and believes, and thereon alleges, that discharges

26  of storm water containing levels of pollutants that do not achieve compliance with

27  BAT/BCT standards from the Mountain Disposal Facility occur during every storm water

28  discharge from the Mountain Disposal Facility.

180.   Mountain Disposal Facility Owners and/or Operators violate Effluent Limitation B(3) of the Storm Water Permit each and every time storm water containing levels of pollutants that do not achieve BAT/BCT standards discharges from the Mountain Disposal Facility.

181.   Waterkeeper is informed and believes, and thereon alleges, that Mountain Disposal Facility Owners' and/or Operators' violations of Effluent Limitation B(3) of the Storm Water Permit and the CWA are ongoing and continuous.

182.   The Mountain Disposal Facility Owners and/or Operators will continue to be in violation of the Storm Water Permit and the CWA each and every time contaminated storm water discharges from the Mountain Disposal Facility in violation of Effluent Limitation B(3) of the Storm Water Permit.

183.   Each and every time Mountain Disposal Facility Owners and/or Operators discharge contaminated storm water from the Mountain Disposal Facility in violation of Effluent Limitation B(3) of the Storm Water Permit is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

184.   By committing the acts and omissions alleged above, the Mountain Disposal Facility Owners and/or Operators are subject to an assessment of civil penalties for each and every violation of the CWA occurring from 20 October 2008 to the present pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

185.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm Waterkeeper has no plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth hereafter.

///

///

Complaint                                    30

## SECOND CAUSE OF ACTION

### Defendants' Discharges of Contaminated Storm Water in Violation of Storm Water Permit Receiving Water Limitation C(1) and the Clean Water Act.
### 33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)

186.   Waterkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

187.   Waterkeeper is informed and believes, and thereon alleges, that storm water containing levels of pollutants that adversely impact human health and/or the environment has discharged and continues to discharge from the Mountain Disposal Facility.

188.   The Mountain Disposal Facility Owners and/or Operators violate Receiving Water Limitation C(1) of the Storm Water Permit each and every time storm water containing levels of pollutants that adversely impact human health and/or the environment discharges from the Mountain Disposal Facility.

189.   Waterkeeper is informed and believes, and thereon alleges, that the Mountain Disposal Facility Owners' and/or Operators' violations of Receiving Water Limitation C(1) of the Storm Water Permit and the CWA from the Mountain Disposal Facility are ongoing.

190.   The Mountain Disposal Facility Owners and/or Operators will continue to be in violation of the Storm Water Permit and the CWA each and every time contaminated storm water discharges from the Mountain Disposal Facility in violation of Receiving Water Limitation C(1) of the Storm Water Permit.

191.   Each and every violation of Receiving Water Limitation C(1) of the Storm Water Permit is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

192.   By committing the acts and omissions alleged above, the Mountain Disposal Facility Owners and/or Operators are subject to an assessment of civil penalties for each and every violation of the CWA occurring from 20 October 2008 to the present pursuant

1   to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. §

2   19.4.

3          193.   An action for injunctive relief under the CWA is authorized by 33 U.S.C.

4   § 1365(a). Continuing commission of the acts and omissions alleged above would

5   irreparably harm Plaintiffs and the citizens of the State of California, for which harm

6   Waterkeeper has no plain, speedy, or adequate remedy at law.

7          WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth

8   hereafter.

9                              **THIRD CAUSE OF ACTION**

10   **Defendants' Discharges of Contaminated Storm Water in Violation of Storm**

11   **Water Permit Receiving Water Limitation C(2) and the Clean Water Act.**

12          **33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

13          194.   Waterkeeper incorporates the allegations contained in the above paragraph

14   as though fully set forth herein.

15          195.   Waterkeeper is informed and believes, and thereon alleges, that storm water

16   containing levels of pollutants that cause or contribute to exceedances of water quality

17   standards has discharged and continues to discharge from the Mountain Disposal Facility.

18          196.   Waterkeeper is informed and believes, and thereon alleges, that discharges

19   of storm water containing levels of pollutants that cause or contribute to exceedances of

20   water quality standards from the Mountain Disposal Facility occur during every storm

21   water discharge from the Mountain Disposal Facility.

22          197.   The Mountain Disposal Facility Owners and/or Operators violate Receiving

23   Water Limitation C(2) of the Storm Water Permit each and every time storm water

24   containing levels of pollutants that cause or contribute to exceedances of water quality

25   standards discharges from the Mountain Disposal Facility.

26          198.   Waterkeeper is informed and believes, and thereon alleges, that the

27   Mountain Disposal Facility Owners' and/or Operators' violations of Receiving Water

28   Limitation C(2) of the Storm Water Permit and the CWA from the Mountain Disposal

1  Facility are ongoing.

2       199.   The Mountain Disposal Facility Owners and/or Operators will continue to be

3  in violation of the Storm Water Permit and the CWA each and every time contaminated

4  storm water discharges from the Mountain Disposal Facility in violation of Receiving

5  Water Limitation C(2) of the Storm Water Permit.

6       200.   Each and every violation of Receiving Water Limitation C(2) of the Storm

7  Water Permit is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C.

8  § 1311(a).

9       201.   By committing the acts and omissions alleged above, the Mountain Disposal

10  Facility Owners and/or Operators are subject to an assessment of civil penalties for each

11  and every violation of the CWA occurring from 20 October 2008 to the present pursuant

12  to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. §

13  19.4.

14       202.   An action for injunctive relief under the CWA is authorized by 33 U.S.C.

15  § 1365(a). Continuing commission of the acts and omissions alleged above would

16  irreparably harm Plaintiffs and the citizens of the State of California, for which harm

17  Waterkeeper has no plain, speedy, or adequate remedy at law.

18       WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth

19  hereafter.

20  **FOURTH CAUSE OF ACTION**

21  **Defendants' Discharges of Non-Storm Water in Violation of the Storm Water**

22  **Permit's Discharge Prohibition A(1) and the Clean Water Act.**

23  **33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

24       203.   Waterkeeper incorporates the allegations contained in the above paragraphs

25  as though fully set forth herein.

26       204.   Waterkeeper is informed and believes, and thereon alleges, that prohibited

27  non-storm water discharges have discharged and continue to discharge from the

28  Mountain Disposal Facility in violation of Discharge Prohibition A(1) of the Storm Water

1   Permit each time water used for dust control is not prevented from discharging from the

2   Mountain Disposal Facility.

3        205.   Waterkeeper is informed and believes, and thereon alleges, that prohibited

4   non-storm water discharges have discharged and continue to discharge from the

5   Mountain Disposal Facility in violation of Discharge Prohibition A(1) of the Storm Water

6   Permit each time water used for truck, vehicle, equipment and/or parts washing is not

7   prevented from discharging from the Mountain Disposal Facility.

8        206.   Waterkeeper is informed and believe, and thereon alleges, that the Mountain

9   Disposal Facility Owners' and/or Operators' violations of Discharge Prohibition A(1) are

10  ongoing and continuous.

11       207.   The Mountain Disposal Facility Owners and/or Operators will continue to be

12  in violation of the Storm Water Permit and the Clean Water Act each and every time non-

13  storm water discharges from the Mountain Disposal Facility to a water of the United

14  States in violation of Discharge Prohibition (A)(1) of the Storm Water Permit.

15       208.   Each and every violation of Discharge Prohibition A(1) of the Storm Water

16  Permit is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C.

17  § 1311(a).

18       209.   By committing the acts and omissions alleged above, the Mountain Disposal

19  Facility Owners and/or Operators are subject to an assessment of civil penalties for each

20  and every violation of the CWA occurring from 20 October 2008 to the present pursuant

21  to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. §

22  19.4.

23       210.   An action for injunctive relief under the CWA is authorized by 33 U.S.C.

24  § 1365(a). Continuing commission of the acts and omissions alleged above would

25  irreparably harm Plaintiffs and the citizens of the State of California, for which harm

26  Waterkeeper has no plain, speedy, or adequate remedy at law.

27       WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth

28  hereafter.

1

## FIFTH CAUSE OF ACTION

2

### Defendants' Failure to Adequately Develop, Implement and/or Revise a Storm Water Pollution Prevention Plan in Violation of the Storm Water Permit Section A and Provision E(2) and Clean Water Act.

3

### 33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)

4

5

211. Waterkeeper incorporates the allegations contained in the above paragraphs

6

as though fully set forth herein.

7

212. Waterkeeper is informed and believes, and thereon alleges, that the

8

Mountain Disposal Facility Owners and/or Operators have failed and continue to fail to

9

adequately develop a SWPPP for the Mountain Disposal Facility, in violation of Section

10

A and Provision E(2) of the Storm Water Permit.

11

213. Waterkeeper is informed and believes, and thereon alleges, that the

12

Mountain Disposal Facility Owners and/or Operators have failed and continue to fail to

13

adequately implement a SWPPP for the Mountain Disposal Facility, in violation of

14

Section A and Provision E(2) of the Storm Water Permit.

15

214. Waterkeeper is informed and believes, and thereon alleges, that the

16

Mountain Disposal Facility Owners and/or Operators have failed and continue to fail to

17

adequately revise a SWPPP for the Mountain Disposal Facility, in violation of Sections

18

A(9) and A(10) of the Storm Water Permit.

19

215. The Mountain Disposal Facility Owners and/or Operators have been in

20

violation of Section A and Provision E(2) of the Storm Water Permit at the Mountain

21

Disposal Facility every day from 20 October 2008 to the present.

22

216. The Mountain Disposal Facility Owners' and/or Operators' violations of

23

Section A and Provision E(2) of the Storm Water Permit and the CWA at the Mountain

24

Disposal Facility are ongoing and continuous.

25

217. The Mountain Disposal Facility Owners and/or Operators will continue to be

26

in violation of Section A and Provision E(2) of the Storm Water Permit and the CWA

27

each and every day the Mountain Disposal Facility Owners and/or Operators fail to

28

adequately develop, implement, and/or revise the SWPPP for the Mountain Disposal

Complaint                                    35

Facility.

218.   Each and every violation of the Storm Water Permit's SWPPP requirements at the Mountain Disposal Facility is a separate and distinct violation of the CWA.

219.   By committing the acts and omissions alleged above, the Mountain Disposal Facility Owners and/or Operators are subject to an assessment of civil penalties for each and every violation of the CWA occurring from 20 October 2008 to the present pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

220.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Waterkeeper and the citizens of the State of California, for which harm Waterkeeper has no plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiffs pray for judgment against the Defendants as set forth hereafter.

## SIXTH CAUSE OF ACTION

**Defendants' Failure to Adequately Develop, Implement, and/or Revise a Monitoring and Reporting Program in Violation of the Storm Water Permit and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

221.   Waterkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

222.   Waterkeeper is informed and believes, and thereon alleges, that the Mountain Disposal Facility Owners and/or Operators have failed and continue to fail to adequately develop an M&RP for the Mountain Disposal Facility in violation of Section B and Provision E(3) of the Storm Water Permit.

223.   Waterkeeper is informed and believes, and thereon alleges, that the Mountain Disposal Facility Owners and/or Operators have failed and continue to fail to adequately implement an M&RP for the Mountain Disposal Facility in violation of

1  Section B and Provision E(3) of the Storm Water Permit.

2      224.   Waterkeeper is informed and believes, and thereon alleges, that the

3  Mountain Disposal Facility Owners and/or Operators have failed and continue to fail to

4  adequately revise an M&RP for the Mountain Disposal Facility in violation of Section B

5  and Provision E(3) of the Storm Water Permit.

6      225.   The Mountain Disposal Facility Owners and/or Operators have been in

7  violation of the Section B and Provision E(3) of the Storm Water Permit at the Mountain

8  Disposal Facility every day from 20 October 2008 to the present.

9      226.   The Mountain Disposal Facility Owners' and/or Operators' violations of

10  Section B and Provision E(3) of the Storm Water Permit and the CWA at the Mountain

11  Disposal Facility are ongoing and continuous.

12      227.   The Mountain Disposal Facility Owners and/or Operators will continue to be

13  in violation of Section B and Provision E(3) the Storm Water Permit and the CWA each

14  and every day they fail to adequately develop, implement, and/or revise an M&RP for the

15  Mountain Disposal Facility.

16      228.   Each and every violation of the Storm Water Permit's M&RP requirements

17  at the Mountain Disposal Facility is a separate and distinct violation of the CWA.

18      229.   By committing the acts and omissions alleged above, the Mountain Disposal

19  Facility Owners and/or Operators are subject to an assessment of civil penalties for each

20  and every violation of the CWA occurring from 20 October 2008 to the present pursuant

21  to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. §

22  19.4.

23      230.   An action for injunctive relief under the CWA is authorized by 33 U.S.C.

24  § 1365(a). Continuing commission of the acts and omissions alleged above would

25  irreparably harm Waterkeeper and the citizens of the State of California, for which harm

26  Waterkeeper has no plain, speedy, or adequate remedy at law.

27      WHEREFORE, Plaintiffs pray judgment against the Defendants as set forth

28  hereafter.

Complaint                          37

## SEVENTH CAUSE OF ACTION

**Defendants' Failure to Report as Required by the Storm Water Permit in Violation of the Storm Water Permit and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

231.   Waterkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

232.   Waterkeeper is informed and believes, and thereon alleges, that the Mountain Disposal Facility Owners and/or Operators have failed and continue to fail to submit accurate Annual Reports to the Regional Board in violation of Sections B(14), C(9), C(10) and C(11) of the Storm Water Permit.

233.   Waterkeeper is informed and believes, and thereon alleges, that the Mountain Disposal Facility Owners and/or Operators have failed and continue to fail to submit complete Annual Reports to the Regional Board in violation of Sections B(14), C(9), C(10), and C(11) of the Storm Water Permit.

234.   The Mountain Disposal Facility Owners' and/or Operators' violations of the reporting requirements of the Storm Water Permit and the CWA are ongoing and continuous.

235.   The Mountain Disposal Facility Owners and/or Operators have been in violation of Section B(14) of the Storm Water Permit and the CWA every day since at least 20 October 2008.

236.   By committing the acts and omissions alleged above, the Mountain Disposal Facility Owners and/or Operators are subject to an assessment of civil penalties for each and every violation of the CWA occurring from 20 October 2008 to the present pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

237.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Waterkeeper and the citizens of the State of California, for which harm

1    Waterkeeper has no plain, speedy, or adequate remedy at law.

2          WHEREFORE, Plaintiffs pray judgment against the Defendants as set forth

3    hereafter.

4    **VII.    RELIEF REQUESTED**

5          238.   Plaintiffs respectfully request that this Court grant the following relief:

6          a.     A Court order declaring Defendants to have violated and to be in violation

7    of the Storm Water Permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a), for their

8    discharges of pollutants not in compliance with the Storm Water Permit and violations of

9    the substantive and procedural requirements of the Storm Water Permit;

10         b.     A Court order enjoining Defendants from violating the substantive and

11   procedural requirements of the Storm Water Permit and the Clean Water Act;

12         c.     A Court order enjoining Defendants from discharging pollutants not in

13   compliance with a NPDES permit;

14         d.     A Court order assessing civil monetary penalties for each violation of the

15   CWA at $32,500 per day per violation for violations occurring from 20 October 2008

16   through 12 January 2009, as permitted by 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4;

17         e.     A Court order assessing civil monetary penalties for each violation of the

18   CWA at $37,500 per day per violation for violations occurring since 12 January 2009, as

19   permitted by 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4;

20         f.     A Court order awarding Plaintiffs their reasonable costs of suit, including

21   attorney, witness, expert, and consultant fees, as permitted by section 505(d) of the Clean

22   Water Act, 33 U.S.C. § 1365(d); and

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

Complaint                                    39

g.     Any other relief as this Court may deem appropriate.

Dated: December 18, 2013

Respectfully submitted,

LAWYERS FOR CLEAN WATER, INC.

Daniel Cooper
Attorneys for Plaintiffs
Inland Empire Waterkeeper and Orange
County Coastkeeper

Complaint                                40



Inland Empire Waterkeeper
*Advocacy • Education • Restoration • Enforcement*

6876 Indiana Avenue, Suite D
Riverside, CA 92506
Phone (951) 530-8823
Fax (951) 530-8824
Website www.iewaterkeeper.org

October 8, 2013

**VIA CERTIFIED MAIL**

Burrtec Waste Industries, Inc.
9890 Cherry Avenue
Fontana, California 92335

Burrtec Waste Group, Inc.
9890 Cherry Ave.
Fontana, California 92335

Mountain Disposal Services, Inc.
Managing Agent
988 North Waterman Canyon Road
Crestline, California 92325

**VIA U.S. MAIL**

Cole Burr
Registered Agent
Burrtec Waste Industries, Inc.
9890 Cherry Ave.
Fontana, California 92335

Cole Burr
Registered Agent
Burrtec Waste Group, Inc.
9890 Cherry Ave.
Fontana, California 92335

Cole Burr
Registered Agent
Mountain Disposal Services, Inc.
9890 Cherry Ave.
Fontana, California 92335

Re:   **Notice of Violation and Intent to File Suit Under the Clean Water Act**

To Whom It May Concern:

    I am writing on behalf of Inland Empire Waterkeeper and Orange County Coastkeeper (collectively "Waterkeeper") in regard to violations of the Clean Water Act[1] and California's Storm Water Permit[2] occurring at 988 North Waterman Canyon Road, Crestline, California 92325 ("Mountain Disposal Facility" or "Facility").[3] This letter is being sent to you as the

---

[1] Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*
[2] National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ.
[3] The Annual Reports and Notices of Intent for this facility list the address as 988 Old Waterman Canyon Road, Crestline, California. However, Waterkeeper's review of maps of the area indicate that the facility is actually located at 988 North Waterman Canyon Road, Crestline, California, which is the address listed on the cover page of the facility's Storm Water Pollution Prevention Plan, and thus will use this address throughout this letter to refer to the facility's physical location.

responsible owners and/or operators of the Mountain Disposal Facility, or as the registered agent for those entities. This letter puts Mountain Disposal Services, Inc., Burrtec Waste Industries, Inc., and Burrtec Waste Group, Inc. (hereinafter referred to as the "Mountain Disposal Facility Owners and/or Operators) on notice of the violations of the Storm Water Permit occurring at the Mountain Disposal Facility including, but not limited to, discharges of polluted storm water from the Mountain Disposal Facility into local surface waters. Violations of the Storm Water Permit are violations of the Clean Water Act. As explained below, the Mountain Disposal Facility Owners and/or Operators are liable for violations of the Storm Water Permit and the Clean Water Act.

Section 505(b) of the Clean Water Act, 33 U.S.C. § 1365(b), requires that a citizen give notice of his/her intention to file suit sixty (60) days prior to the initiation of a civil action under Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a). Notice must be given to the alleged violator, the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator of the EPA, the Executive Officer of the water pollution control agency in the State in which the violations occur, and, if the alleged violator is a corporation, the registered agent of the corporation. See 40 C.F.R. § 135.2(a)(1).

By this letter issued pursuant to 33 U.S.C. §§ 1365(a) and (b) of the Clean Water Act (hereinafter "Notice Letter"), Waterkeeper puts the Mountain Disposal Facility Owners and/or Operators on notice that, after the expiration of sixty (60) days from the date of this Notice Letter, Waterkeeper intends to file an enforcement action in Federal court against them for violations of the Storm Water Permit and the Clean Water Act.

I.     **BACKGROUND**

A. **Inland Empire Waterkeeper and Orange County Coastkeeper**

Inland Empire Waterkeeper's office is located at 6876 Indiana Avenue, Suite D, Riverside, California 92506. Inland Empire Waterkeeper is a chapter of Orange County Coastkeeper. Orange County Coastkeeper is a non-profit public benefit corporation organized under the laws of the State of California with its office at 3151 Airway Avenue, Suite F-110, Costa Mesa, California 92626. Together, Inland Empire Waterkeeper and Orange County Coastkeeper have over 2,000 members who live and/or recreate in and around San Bernardino County and the Santa Ana River watershed. Inland Empire Waterkeeper and Orange County Coastkeeper are dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of their local watersheds, including the Santa Ana River and its tributaries. To further these goals, Waterkeeper actively seeks federal and state agency implementation of the Clean Water Act, and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

Members of Waterkeeper use and enjoy the waters into which the Mountain Disposal Facility discharges into, including the Santa Ana River and its tributaries. Members of Waterkeeper use and enjoy the Santa Ana River and its tributaries to picnic, hike, view wildlife, and engage in scientific study, including monitoring activities, among other things. Procedural

Notice of Violation and Intent to File Suit
October 8, 2013
Page 3 of 18

and substantive violations of the Storm Water Permit including, but not limited to, the discharge of pollutants from the Mountain Disposal Facility, impairs each of these uses. Further, these violations are ongoing and continuous. Thus, the interests of Waterkeeper's members have been, are being, and will continue to be adversely affected by the Mountain Disposal Facility Owners' and/or Operators' failure to comply with the Storm Water Permit and the Clean Water Act.

## B. The Owners and/or Operators of the Mountain Disposal Facility

Prior to beginning industrial operations, dischargers are required to apply for coverage under the Storm Water Permit by submitting a Notice of Intent ("NOI") to the State Water Resources Control Board ("State Board") to obtain Storm Water Permit coverage. *See* Storm Water Permit, Finding #3. The Mountain Disposal Facility Owners' and/or Operators' NOI was approved by the State Board on November 17, 1992. The Receipt of NOI from the State Board listed the facility information as "Mountain Disposal Service, 988 Old Waterman Canyon Road, Crestline" and identified the facility operator as "Mountain Disposal Service." Waterkeeper obtained a second NOI from the State Board, dated July 9, 2012, which is unsigned and contains the same information. The Facility's Waste Discharge Identification ("WDID") number is 8-36I000650.

Information available to Waterkeeper indicates that Mountain Disposal Services, Inc. is an owner and/or operator of the Mountain Disposal Facility.[4] Information available to Waterkeeper indicates that Burrtec Waste Industries, Inc. leases the property located at 988 Old Waterman Canyon Road and is also an owner and/or operator of the Mountain Disposal Facility. Information available to Waterkeeper indicates that Burrtec Waste Group, Inc. owns Burrtec Waste Industries, Inc. in whole. Therefore, Burrtec Waste Group, Inc. is also an owner and/or operator of the Mountain Disposal Facility.

The Mountain Disposal Facility Owners and/or Operators have violated and continue to violate the procedural and substantive terms of the Storm Water Permit including, but not limited to, the illegal discharge of pollutants from the Mountain Disposal Facility into local waters.

## C. Storm Water Pollution and the Waters Receiving the Facility's Discharges

With every significant rainfall event, millions of gallons of polluted storm water originating from industrial operations such as the Mountain Disposal Facility pour into storm drains and local waterways. The consensus among agencies and water quality specialists is that storm water pollution accounts for more than half of the total pollution entering surface waters each year. Such discharges of pollutants from industrial facilities contribute to the impairment of downstream waters and adversely impact aquatic-dependent wildlife. These contaminated discharges can and must be controlled for downstream ecosystems to regain their health.

---

[4] While the NOI identifies the operator as "Mountain Waste Service," the California Secretary of State website indicates that the corporation is registered as "Mountain Waste Services, Inc."

Notice of Violation and Intent to File Suit
October 8, 2013
Page 4 of 18

Storm water discharges from solid waste vehicle and equipment maintenance facilities, like the Mountain Disposal Facility, contain pollutants such as: oil and grease ("O&G"); hydraulic fluids; transmission fluid; antifreeze; total suspended solids ("TSS"); heavy metals (such as copper, iron, lead, aluminum, and zinc); pathogens; and nutrients. Many of these pollutants are on the list of chemicals published by the State of California as known to cause cancer, birth defects, and/or developmental or reproductive harm. Discharges of polluted storm water to the Santa Ana River and its tributaries pose carcinogenic and reproductive toxicity threats to the public and adversely affect the aquatic environment.

Discharges from the Mountain Disposal Facility flow into Waterman Canyon Creek, then into East Twin Creek, Warm Creek, and the Santa Ana River (collectively the "Receiving Waters"). The Santa Ana River and its tributaries are ecologically sensitive areas. Although pollution and habitat destruction have drastically diminished once-abundant and varied fisheries, the Receiving Waters still provide essential habitat for dozens of fish, bird, and invertebrate species. These pollutants harm the special aesthetic and recreational significance that the Receiving Waters have for people in the surrounding communities, including Waterkeeper's members. The public's use of the Receiving Waters for water contact sports exposes people to toxic metals and other contaminants in storm water and non-storm water discharges. Non-contact recreational and aesthetic opportunities, such as wildlife observation, are also impaired by polluted discharges to the Receiving Waters.

The California Regional Water Quality Control Board, Santa Ana Region Regional Board ("Regional Board") issued the *Santa Ana River Basin Water Quality Control Plan* ("Basin Plan"). The Basin Plan identifies the "Beneficial Uses" of water bodies in the region. The Beneficial Uses for Waterman Canyon Creek and the Santa Ana River near or downstream of the point at which it receives polluted storm water discharges from the Mountain Disposal Facility (i.e., Santa Ana River Reaches 1 – 5) include: Municipal and Domestic Supply; Agricultural Supply; Groundwater Recharge; Water Contact Recreation; Non-contact Water Recreation; Warm Freshwater Habitat; Cold Freshwater Habitat; Wildlife Habitat; and Rare, Threatened, or Endangered Species. *See* Basin Plan at Table 3-1. According to the 2010 303(d) List of Impaired Water Bodies, Reach 4 of the Santa Ana River is impaired for pathogens, Reach 3 of the Santa Ana River is impaired for copper, lead, and pathogens, and Reach 2 of the Santa Ana River is impaired for indicator bacteria.[5] Polluted discharges from industrial sites such as the Mountain Disposal Facility contribute to the degradation of these already impaired surface waters and of the ecosystems that depend on these waters.

## II.   THE MOUNTAIN DISPOSAL FACILITY AND ASSOCIATED DISCHARGES OF POLLUTANTS

### A.   Mountain Disposal Facility Site Description

The Mountain Disposal Facility is 0.8 acres in total size and approximately 16% of the

---

[5] 2010 Integrated Report – All Assessed Waters, available at:
http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2010.shtml, (last accessed on July 8, 2013).

Notice of Violation and Intent to File Suit
October 8, 2013
Page 5 of 18

site is impervious.[6] The SWPPP and site map for the Mountain Disposal Facility indicate that the Facility includes an uncovered gravel area for truck parking, an uncovered paved area for truck parking, an uncovered solid waste collection bin storage area, an office, a wash rack, an oil/water separator, a clarifier, an uncovered electronic waste storage area, an uncovered fueling area consisting of an aboveground diesel tank connected to a fueling pump with no secondary containment or berming, and two material storage areas for oil, waste oil, paint, solvents, detergents, and diesel. These hazardous fluids are kept in different tanks, including 55-gallon drums, 180-gallon plastic tanks, 200-gallon steel tanks, 280-gallon plastic tanks, 320-gallon plastic tanks, and an 8000-gallon tank. Vegetation is on the northern portion of the site and North Waterman Canyon Road is on the southern border of the property. Waterkeeper's site investigations indicate that there is also an area used for receiving electronic and other waste from the community, and for sorting this waste. The SWPPP does not indicate the location where this waste is received and sorted.

### B.  Mountain Disposal Facility Industrial Activities and Associated Pollutants

According to the Mountain Disposal Facility SWPPP, the Facility serves as a collection truck parking and maintenance yard, as well as a maintenance and storage facility for solid waste collection bins. Information available to Waterkeeper indicates that the following industrial activities occur at the Mountain Disposal Facility: storage of materials including, but not limited to, oil, waste oil, paint, solvents, detergents, and diesel; vehicle washing; vehicle fueling; truck maintenance; truck parking; loading and unloading materials; and collection bin storage and maintenance. In addition, the SWPPP states that the Facility handles, stores, and uses petroleum products, including No. 2 fuel oil, motor oil, gear oil, hydraulic fluid, waste oil, solvents, paints, and degreasers. These products are delivered in tanker trucks, stored in aboveground storage tanks and drums, and then used by the Mountain Disposal Facility Owners and/or Operators to maintain the Facility's collection truck fleet. The Facility's collection trucks are refueled from an aboveground diesel tank connected to a fueling pump.

The NOI and SWPPP for the Facility list the Standard Industrial Classification ("SIC") Code for the Facility as 4212 (Motor Freight Transportation and Warehousing). For facilities classified as SIC Code 4212, the Storm Water Permit requires permit coverage for "vehicle maintenance shops, equipment cleaning operations, or airport deicing operations." Storm Water Permit, Attachment 1. The Storm Water Permit regulates the portions of the facility which are used for "vehicle maintenance (including vehicle rehabilitation, mechanical repairs, painting, fueling, and lubrication) or other operations identified herein that are associated with industrial activity." Storm Water Permit, Attachment 1; *see also* Storm Water Permit, Attachment 4 (stating that "storm water associated with industrial activity" includes storm water discharges from material handling activities and storage areas for material handling equipment). Waterkeeper puts the Mountain Disposal Facility Owners and/or Operators on notice that one or more of these regulated activities is conducted at locations throughout the entire Mountain Disposal Facility, and thus the entire Facility requires Storm Water Permit coverage. In addition,

---

[6] The SWPPP states that the site is 1 acre in total size and 75% impervious, but the SWPPP site map states that the site is 0.8 acres in total size and 16% impervious.

Notice of Violation and Intent to File Suit
October 8, 2013
Page 6 of 18

even if the regulated industrial activities are not occurring throughout the entire Facility at all times, under the Storm Water Permit's definition of "storm water associated with industrial activities" and explanation of material handling activities, Waterkeeper puts the Mountain Disposal Facility Owners and/or Operators on notice that since no best management practices ("BMPs") or other controls exist to separate the storm water flows from portions of the Facility where non-regulated activities may occur from storm water flows from the regulated industrial activities, storm water at the Facility commingles and thus, all storm water discharges from the Facility are regulated under the Storm Water Permit.

Pollutants identified in the Mountain Disposal SWPPP include diesel, motor oil, hydraulic fluid, antifreeze, transmission oil, gear oil, waste oil, degreaser, brake cleaner spray, solid waste residues, and paint. Information available to Waterkeeper indicates that additional pollutants associated with solid waste vehicle and equipment maintenance facilities include, but are not limited to: TSS, Specific Conductance ("SC"), pH, O&G, metals, pathogens, and nutrients.

Information available to Waterkeeper, including observations of staining on uncovered pavement on the site, indicates that fueling, storage and maintenance of vehicles and equipment, and other industrial activities occur at the Mountain Disposal Facility without adequate cover to prevent storm water and non-storm water exposure to pollutant sources, and without secondary containment or other measures to prevent polluted storm water and non-storm water from discharging from the Mountain Disposal Facility. The resulting illegal discharges of polluted water impact Waterkeeper's members' use and enjoyment of the Receiving Waters by degrading the quality of the Receiving Waters and by posing risks to human health and aquatic life.

## C. The Mountain Disposal Facility Storm Water Discharge Locations

The site map included with the Mountain Disposal Facility SWPPP indicates that there is one discharge point at the Mountain Disposal Facility, located near the southern end of the Facility along Waterman Canyon Road. The 2010-2011 Annual Report indicates that there are two discharge points at the Facility, but does not identify the locations of these discharge points. Further, the Facility SWPPP states that "Visual inspections shall occur at outfall points N°1 and N°2 shown on the Site Plan," but outfalls with these markings are not identified on the SWPPP site map. Information available to Waterkeeper indicates that, due to the lack of curbs or other storm water conveyance features at the Facility, storm water may discharge from the Facility at any point along the northeastern, eastern, and southern boundaries of the Facility, and thus there is at least one, but may be more, discharge point at the Facility.

## III.    VIOLATIONS OF THE CLEAN WATER ACT AND THE STORM WATER PERMIT

### A. Discharges of Polluted Storm Water from the Mountain Disposal Facility in Violation of Effluent Limitation B(3) of the Storm Water Permit

Effluent Limitation B(3) of the Storm Water Permit requires dischargers to reduce or

Notice of Violation and Intent to File Suit
October 8, 2013
Page 7 of 18

prevent pollutants associated with industrial activity in storm water discharges through implementation of BMPs that achieve best available technology economically achievable ("BAT") for toxic pollutants[7] and best conventional pollutant control technology ("BCT") for conventional pollutants.[8] EPA's Industrial Storm Water Permit contains benchmark values, which are objective standards for evaluating whether a permittee's BMPs achieve compliance with BAT/BCT, as required by Effluent Limitation B(3) of the Storm Water Permit ("EPA Benchmarks").[9]

Due to the Mountain Disposal Facility Owners' and/or Operators' failure to conduct sampling as required under the Storm Water Permit, storm water sampling data is only available for the Mountain Disposal Facility for the 2012-2013 Wet Season.[10] *See* Section D, below. However, during this one most recent Wet Season, storm water sampling at the Mountain Disposal Facility demonstrated that concentrations of pollutants in storm water discharges from the Facility exceed applicable EPA Benchmarks. In particular, the storm water sample collected on March 9, 2013 contained 22 mg/L of O&G, which exceeds the EPA Benchmark of 15 mg/L. Waterkeeper believes and thereon alleges that discharges from Mountain Disposal Facility also contain concentrations of pollutants including, but not limited to, copper, lead, aluminum, iron, and zinc and pathogens, that are above applicable EPA Benchmarks.[11]

The exceedances of EPA Benchmarks demonstrates that the Mountain Disposal Facility Owners and/or Operators have failed to develop and/or implement required BMPs at the Mountain Disposal Facility that achieve compliance with the BAT/BCT standards. Waterkeeper puts the Mountain Disposal Facility Owners and/or Operators on notice that they violate Effluent Limitation B(3) of the Storm Water Permit each time they discharge polluted storm water without developing and/or implementing BMPs that achieve compliance with the BAT/BCT standards, including, but not limited to, the dates identified above. These violations are ongoing and will continue every time the Mountain Disposal Facility Owners and/or Operators discharge polluted storm water without developing and/or implementing BMPs that achieve compliance with the BAT/BCT standards. Waterkeeper will update the dates of violations when additional information and data become available. Each time that the Mountain Disposal Facility Owners and/or Operators discharge polluted storm water in violation of Effluent Limitation (B)(3) of the Storm Water Permit is a separate and distinct violation of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). The Mountain Disposal Facility Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring since at least October 8, 2008.

---

[7] Toxic pollutants are listed at 40 C.F.R. § 401.15 and include copper, lead, and zinc, among others.
[8] Conventional pollutants are listed at 40 C.F.R. § 401.16 and include BOD, TSS, O & G, pH, and fecal coliform. '
[9] *See United States Environmental Protection Agency (EPA) National Pollutant Discharge Elimination System (NPDES) Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity (MSGP) Authorization to Discharge Under the National Pollutant Discharge Elimination System,* as modified effective May 27, 2009 ("Multi-Sector Permit"), Fact Sheet at 106; *see also,* 73 Federal Register 56572 (2008).
[10] The Wet Season is defined as October 1 – May 31.
[11] EPA Benchmarks for certain pollutants, including copper and zinc, are hardness dependent. *See Multi-Sector Permit,* Fact Sheet at 101-102. Here, we use the default Water Hardness Range of 75-100 mg/L.

Notice of Violation and Intent to File Suit
October 8, 2013
Page 8 of 18

### B. Discharges of Polluted Storm Water from the Mountain Disposal Facility in Violation of Receiving Water Limitations C(1) and C(2) of the Storm Water Permit

Receiving Water Limitation C(1) of the Storm Water Permit prohibits storm water discharges and authorized non-storm water discharges to surface water or groundwater that adversely impact human health or the environment. Discharges that contain pollutants in concentrations that exceed levels known to adversely impact aquatic species and the environment constitute violations of Receiving Water Limitation C(1) of the Storm Water Permit and the Clean Water Act. Receiving Water Limitation C(2) of the Storm Water Permit prohibits storm water discharges and authorized non-storm water discharges that cause or contribute to an exceedance of an applicable Water Quality Standard ("WQS").[12] Applicable WQS include, among others, the Criteria for Priority Toxic Pollutants in the State of California, 40 C.F.R. § 131.38 ("CTR"). The Basin Plan sets out additional WQSs, including WQSs for total coliform and fecal coliform when the Beneficial Uses of a lake or stream include Municipal and Domestic Supply, Non-contact Water Recreation, and Water Contact Recreation, such as the Receiving Waters. Discharges that contain pollutants in excess of an applicable WQSs violate Receiving Water Limitation C(2) of the Storm Water Permit and the Clean Water Act.[13]

Information available to Waterkeeper indicates that storm water discharges from the Mountain Disposal Facility contain elevated concentrations of pollutants such as copper, lead, zinc, and pathogens, including coliform bacteria and *Escherichia coli*, among others. The Receiving Waters are impaired for copper, lead, and pathogens. Information available to Waterkeeper indicates that storm water discharges from the Mountain Disposal Facility containing elevated concentrations of pollutants can be acutely toxic and/or have sub-lethal impacts on the avian and aquatic wildlife in the Receiving Waters. Information available to Waterkeeper further indicates that storm water discharges from the Mountain Disposal Facility containing elevated concentrations of pollutants cause or contribute to a violation of an applicable WQS.

Waterkeeper puts Mountain Disposal Facility Owners and/or Operators on notice that they violate Receiving Water Limitation C(1) and/or Receiving Water Limitation C(2) each time storm water discharges from the Facility containing pollutants that adversely affect human health or the environment and/or cause or contribute to a violation of an applicable WQS. Each time that discharges of storm water from the Mountain Disposal Facility adversely impact human health or the environment is a separate and distinct violation of Receiving Water Limitation C(1) of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). Each time that discharges of storm water from the Mountain Facility cause or contribute to a violation of an applicable WQS is a separate and distinct violation of Receiving Water Limitation C(2) of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). These violations are ongoing and Waterkeeper will update the dates of violations when additional

---

[12] WQS include pollutant concentration levels determined by the State Water Resources Control Board and the EPA to be protective of the Beneficial Uses of receiving waters. Discharges above WQS contribute to the impairment of the receiving waters' Beneficial Uses.
[13] WQS for certain pollutants, including copper and zinc, are hardness dependent. *See* 40 C.F.R. § 131.38.

Notice of Violation and Intent to File Suit
October 8, 2013
Page 9 of 18

information and data become available. The Mountain Disposal Facility Owners and/or
Operators are subject to civil penalties for all violations of the Clean Water Act occurring since
industrial operations began, which appears to be since at least October 8, 2008.

### C. Unauthorized and Authorized Non-Storm Water Discharges from the Mountain Disposal Facility in Violation of Discharge Prohibition A(1) of the Storm Water Permit

Except as allowed in Special Conditions D(1) of the Storm Water Permit, Discharge
Prohibition A(1) prohibits permittees from discharging materials other than storm water (non-
storm water discharges) either directly or indirectly to waters of the United States. Prohibited
non-storm water discharges must be either eliminated or permitted by a separate NPDES permit.
Storm Water Permit, Discharge Prohibition A(1).

Information available to Waterkeeper indicates that non-storm water discharges from the
Facility due to inadequate BMP development and/or implementation necessary to prevent these
discharges. Information available to Waterkeeper indicates that unauthorized non-storm water
discharges occur at the Facility from truck, vehicle, equipment, and/or parts washing, and/or
from dust control activities. These non-storm water discharges are not from sources that are
listed among the authorized non-storm water discharges in Special Conditions D(1) of the Storm
Water Permit and thus are always prohibited without a separate NPDES permit. Information
available to Waterkeeper indicates that the Mountain Disposal Facility Owners and/or Operators
have not obtained a separate NPDES permit for the Facility's unauthorized non-storm water
discharges, as thus these discharges are in violation of Discharge Prohibition A(1) of the Storm
Water Permit, even though the Facility's SWPPP includes potential BMPs for some of these
discharges.

Certain non-storm water discharges are allowed, such as fire hydrant flushing, drinking
fountain water, and landscape watering, only if all requirements under Special Conditions D(1)
of the Storm Water Permit are met. These include, but are not limited to, the development and
implementation of BMPs, which must be specifically listed in the SWPPPP, to prevent or reduce
the contact of non-storm water discharges with significant materials and equipment, and the non-
storm water discharges must not contain significant quantities of pollutants. The Mountain
Disposal Facility Owners and/or Operators stated in the Facility's 2011-2012 and 2012-2013
Annual Reports that they observed authorized non-storm water discharges at the Facility, but do
not describe the source of these non-storm water discharges, as required by Special Conditions
D(1)(b)(v). In addition, the SWPPP fails to include BMPs for non-storm water discharges that
are from any sources permitted by Special Conditions D(1). Thus, even if the non-storm water
discharges are from one of the sources listed in Special Conditions D(1), they are still prohibited
because the Special Conditions in Provision D(1) have not been met. Therefore, the "authorized"
non-storm water discharges observed by the Mountain Disposal Facility Owners and/or
Operators are in violation of Discharge Prohibition A(1) of the Storm Water Permit.

Waterkeeper puts the Mountain Disposal Facility Owners and/or Operators on notice that
Discharge Prohibition A(1) is violated each time non-storm water discharges occur at the

Notice of Violation and Intent to File Suit
October 8, 2013
Page 10 of 18

Facility. These discharge violations are ongoing and will continue until the Mountain Disposal Facility Owners and/or Operators develop and implement BMPs that prevent prohibited non-storm water discharges, or obtain separate NPDES permit coverage. Each time the Mountain Disposal Facility Owners and/or Operators discharge prohibited non-storm water in violation of Discharge Prohibition A(1) of the Storm Water Permit is a separate and distinct violation of the Storm Water Permit and section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). Mountain Disposal Facility Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring since at least October 8, 2008.

**D.   Failure to Develop, Implement and/or Revise an Adequate Storm Water Pollution Prevention Plan**

Section A(1) and Provision E(2) of the Storm Water Permit require dischargers to have developed and implemented a SWPPP by October 1, 1992, or prior to beginning industrial activities, that meets all of the requirements of the Storm Water Permit. The objective of the SWPPP requirement is to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges, and to implement site-specific BMPs to reduce or prevent pollutants associated with industrial activities in storm water discharges. Storm Water Permit, Section A(2). These BMPs must achieve compliance with the Storm Water Permit's Effluent Limitations and Receiving Water Limitations. To ensure compliance with the Storm Water Permit, the SWPPP must be evaluated on an annual basis pursuant to the requirements of Section A(9). The SWPPP must also be revised as necessary to ensure compliance with the Storm Water Permit. Storm Water Permit, Sections A(9) and A(10).

Sections A(3) – A(10) of the Storm Water Permit set forth the requirements for a SWPPP. Among other information, the SWPPP must include: identification of individual(s) and their responsibilities in developing, implementing, and revising the facility's SWPPP (*see* Storm Water Permit Section, A(3)(a)); a site map with information including storm water drainage areas with flow patterns, nearby water bodies, and the location of the storm water collection and conveyance system and associated points of discharge (*see* Storm Water Permit, Section A(4)); and a list of significant materials handled and stored at the facility (*see* Storm Water Permit, Section A(5)). Sections A(7) and A(8) require an assessment of industrial activities and potential pollutant sources at the facility and a description of the BMPs to be implemented at the facility that will reduce or prevent pollutants in storm water discharges and authorized non-storm water discharges, including structural BMPs where non-structural BMPs are not effective.

Information available to Waterkeeper indicates that the Mountain Disposal Facility Owners and/or Operators have been conducting and continue to conduct operations at the Mountain Disposal Facility with an inadequately developed, implemented, and/or revised SWPPP. For example, the SWPPP lists the "Stormwater Pollution Prevention Team" members, but states only that their individual responsibilities are "to be determined," in violation of Section B(3) of the Storm Water Permit. Moreover, the site map does not include all of the requirements of Section A(4) of the Storm Water Permit. For example, the site map does not include: portions of the drainage area impacted by run-on from surrounding areas, on-site surface water bodies, areas of soil erosion, nearby water bodies, the location of the storm water collection and

Notice of Violation and Intent to File Suit
October 8, 2013
Page 11 of 18

conveyance system, locations where materials are directly exposed to precipitation, and all areas of industrial activity.

Additionally, the Mountain Disposal Facility SWPPP does not include a list of significant materials handled and stored at the site, in violation of Section A(5) of the Storm Water Permit. Since it is missing this list, the SWPPP also does not include all of the additional information required for each material, such as the locations where the material is being stored, received, shipped, and handled.

Fourth, the SWPPP does not include the required descriptions and assessments of all industrial activities, potential pollutant sources, and potential pollutants. The Storm Water Permit requires the SWPPP to include a narrative description of these components, but instead the Facility SWPPP includes only a table listing general industrial activities, such as "material storage" and "loading and unloading of materials," and then lists their associated pollutants. Required details about the industrial processes that occur at the Facility, such as the type, characteristics, and quantity of significant materials used in or resulting from each process, are not included, nor are all materials handling and storage areas adequately described. Plus, the SWPPP does not describe or assess the electronic and other waste collection and sorting area at the Facility as a potential pollutant source, which has been observed by Waterkeeper. The failure to properly list and describe all of the Facility's industrial activities, pollutant sources, and pollutants is a violation of Section A(6) of the Storm Water Permit. Further, since the SWPPP does not even contain an adequate description of potential pollutant sources at the Facility, it also does not include an assessment of the Facility's potential pollutant sources, in violation of Section A(7) of the Storm Water Permit.

Finally, the limited BMPs listed in the Facility SWPPP are not sufficient to comply with the requirements of Section A(8) of the Storm Water Permit. Since the SWPPP does not describe any potential pollutant sources, the BMPs listed in the SWPPP are not linked to any particular potential pollutant sources. *See* Storm Water Permit, Section A(8) (requiring a "narrative description of the storm water BMPs to be implemented at the facility for each potential pollutant and its source"). Further, since no mention is made of the electronic and other waste storage activities that occur at the Facility, the SWPPP also fails to develop appropriate BMPs to reduce or prevent the contamination of storm water with pollutants associated with these activities. Thus, the Mountain Disposal Facility Owners and/or Operators have not developed and implemented BMPs to reduce or prevent pollutants from each potential source at the Facility, such as the vehicle washing and fueling, as required by Section A(8) of the Storm Water Permit.

Waterkeeper puts the Mountain Disposal Facility Owners and/or Operators on notice that they violate Section A and Provision E(2) of the Storm Water Permit and the Clean Water Act every day that they operate the Mountain Disposal Facility with an inadequately developed, implemented, and/or revised SWPPP. Every day that the Mountain Disposal Facility Owners and/or Operators operate the Facility with an inadequately developed, implemented, and/or revised SWPPP is a separate and distinct violation of the Storm Water Permit and the Clean Water Act. The Mountain Disposal Facility Owners and/or Operators have been in daily and

Notice of Violation and Intent to File Suit
October 8, 2013
Page 12 of 18

continuous violation of the Storm Water Permit's SWPPP requirements. These violations are ongoing and Waterkeeper will include additional violations in its enforcement action. The Mountain Disposal Facility Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring since October 8, 2008.

## E. Failure to Develop, Implement, and/or Revise an Adequate Monitoring and Reporting Program

Section B(1) and Provision E(3) of the Storm Water Permit requires facility operators to develop and implement a monitoring and reporting plan ("M&RP") by October 1, 1992, or prior to the commencement of industrial activities at a facility, that meets all of the requirements of the Storm Water Permit. The primary objective of the M&RP is to detect and measure the concentrations of pollutants in a facility's discharge to ensure compliance with the Storm Water Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. *See* Storm Water Permit, Section B(2). The M&RP must therefore ensure that BMPs are effectively reducing and/or eliminating pollutants at the facility, and are evaluated and revised whenever appropriate to ensure compliance with the Storm Water Permit. *See id.* Dischargers must also revise the M&RP as necessary for compliance with the Storm Water Permit. *See* Storm Water Permit, Sections B(2) and B(4).

Sections B(3) – B(16) of the Storm Water Permit set forth the M&RP requirements. Specifically, Section B(3) requires dischargers to conduct quarterly visual observations of all drainage areas within their facility for the presence of authorized and unauthorized non-storm water discharges. Section B(4) requires dischargers to conduct visual observations of storm water discharges during the first hour of discharge at each discharge point of at least one storm event per month during the Wet Season. Sections B(3) and B(4) further require dischargers to document the presence of any floating or suspended material, O&G, discolorations, turbidity, odor and the source of any pollutants when conducting visual observations. Dischargers must maintain records of observations, observation dates, locations observed, and responses taken to eliminate unauthorized non-storm water discharges and to reduce or prevent pollutants from contacting non-storm water and storm water discharges. Storm Water Permit, Sections B(3) and (4).

Sections B(5) and B(7) of the Storm Water Permit require dischargers to collect samples of storm water discharges from all locations where storm water is discharged. Under Section B(5) of the Storm Water Permit, the Mountain Disposal Facility Owners and/or Operators are required to collect at least two samples from each discharge point each Wet Season, including one sample from the first storm event of the Wet Season. These samples must be taken during the first hour of discharge. Storm water samples must be analyzed for TSS, pH, SC, and total organic carbon or O&G. Storm Water Permit, Section B(5)(c)(i). These samples shall also be analyzed for toxic pollutants and other pollutants that are likely to be present in storm water discharges in significant quantities. Storm Water Permit, Section B(5)(c)(ii).

The Mountain Disposal Facility Owners and/or Operators have been conducting operations at the Mountain Disposal Facility with an inadequately developed, implemented,

Notice of Violation and Intent to File Suit
October 8, 2013
Page 13 of 18

and/or revised M&RP. For example, in the Facility's 2008-2009, 2009-2010, and 2010-2011 Annual Reports, the Mountain Disposal Facility Owners and/or Operators stated that their Facility was exempt from collecting and analyzing samples from two storm events because the Facility received Regional Board Certification.[14] However, although the Storm Water Permit allows for sampling and analysis exemptions pursuant to a Regional Water Board Certification Program (*see* Storm Water Permit, Section B(12)(a)(ii)), the Storm Water Permit requires facility operators to "submit the appropriate certifications and required documentation to the Regional Water Boards prior to the wet season (October 1) and *recertify* as part of the Annual Report submittal." Storm Water Permit, Section B(12) (emphasis added). The Mountain Disposal Facility Owners and/or Operators never underwent this annual recertification process, nor did they submit their certifications and required documentation to the Regional Board with each Annual Report for which they were claiming this exemption. Instead, the Mountain Disposal Facility Owners and/or Operators only included the certification letter, dated June 27, 1996, in the Facility's 2004-2005 Annual Report and never again. Since the Mountain Disposal Facility Owners and/or Operators did not comply with the requirements for obtaining an exemption from the Storm Water Permit's sampling and analysis requirements, they are in violation of Section B(5) of the Storm Water Permit for failing to collect any storm water samples during the 2008-2009, 2009-2010, and 2010-2011 Wet Seasons. In the event that the Facility should have been exempt from sampling during these Wet Seasons, the Mountain Disposal Facility Owners and/or Operators are in violation of Section B(12) for failing to properly renew their exemption certification.

Even facilities that are exempt from sampling pursuant to Section B(12) of the Storm Water Permit are still required to comply with all other monitoring and reporting requirements in the Storm Water Permit. *See* Storm Water Permit, Section B(12). However, during the 2008-2009, 2009-2010, and 2010-2011 Wet Seasons, the Mountain Disposal Facility Owners and/or Operators failed to properly conduct visual observations as required by the Storm Water Permit. For example, during the 2008-2009 Wet Season, the Mountain Disposal Facility Owners and/or Operators did not conduct any quarterly visual observations of the Facility's authorized and/or unauthorized non-storm water discharges or any monthly visual observations of the Facility's storm water discharge points, in violation of Sections B(3) and B(4) of the Storm Water Permit. Further, during the 2009-2010 Wet Season, the Mountain Disposal Facility Owners and/or Operators checked the boxes stating that they conducted these required visual observations, but did not provide any of the required information documenting the observation locations, dates, times, appearance of the discharges, and other information required by Sections B(3) and B(4) of the Storm Water Permit. In the Facility's 2010-2011 Annual Report, the Mountain Disposal Facility Owners and/or Operators did finally conduct visual observations of the non-storm water discharges and discharge points at the Facility, but still failed to comply with the Storm Water Permit because the observations of the unauthorized non-storm water discharges were not conducted during daylight hours and no records were kept of the time of the observations of the authorized non-storm water discharges. Additionally, the monthly visual observations of the storm water discharge points were not conducted at both discharge points every month, the

---

[14] The Mountain Disposal Facility Owners and/or Operators also stated in their 2010-2011 Annual Report that they did not sample or analyze storm water samples at the Facility during this Wet Season because the Facility "is not equipped to test any storm water discharges."

records do not include the time the discharge began for each month to determine if the observation occurred during the first hour of discharge, and the descriptions of the observations, when they were provided at all, were exactly the same for every month, despite the fact that the observations in the first month indicated the need for additional BMPs. All of these failures to properly conduct or record visual observations are violations of Sections B(3) and B(4) of the Storm Water Permit during the 2008-2009, 2009-2010, and 2010-2011 Wet Seasons.

In the Facility's 2011-2012 and 2012-2013 Annual Reports, the Mountain Disposal Facility Owners and/or Operators did not claim that the Facility was exempt from sampling and analyzing storm water samples. However, the Facility's Annual Reports state that the Mountain Disposal Facility Owners and/or Operators did not collect any storm water samples during the 2011-2012 Wet Season "due to lack of staff training," and one of the two samples collected during the 2012-2013 Wet Season was not collected after 3 working days of dry weather due to "inexperience." This failure to sample and failure to sample correctly are violations of Section B(5) of the Storm Water Permit. Further, the Mountain Disposal Facility Owners and/or Operators failed to analyze the storm water samples collected in 2012-2013 for all pollutants likely to be present in significant quantities. Information available to Waterkeeper indicates that metals such as copper, aluminum, iron, and zinc, and pathogens, including *Escherichia coli* and coliform bacteria, are likely to be present in significant quantities in storm water runoff from solid waste vehicle and equipment maintenance facilities such as the Mountain Disposal Facility. However, the Mountain Disposal Facility Owners and/or Operators have not analyzed storm water samples for these pollutants, in violation of Section B(5)(c)(ii).

During the 2011-2012 and 2012-2013 Wet Seasons, the Mountain Disposal Facility Owners and/or Operators again failed to properly conduct and record their monthly visual observations of the Facility's storm water discharge points. During the 2011-2012 Wet Season, the visual observations were not always conducted during the first hour of discharge. Further, during the 2012-2013 Wet Season, the Mountain Disposal Facility Owners and/or Operators failed to document the presence of any floating or suspended material, O&G, discolorations, turbidity, odor, or the source of any pollutants, and either did not conduct the observations during the first hour of discharge or did not record the time that the discharge began to determine this information. These failures to properly conduct and record monthly storm water discharge visual observations are a violation of Section B(4) of the Storm Water Permit.

The Mountain Disposal Facility Owners' and/or Operators' failure to conduct sampling and monitoring as required by the Storm Water Permit demonstrates that they have failed to develop, implement and/or revise an M&RP that complies with the requirements of Section B and Provision E(3) of the Storm Water Permit. The Mountain Disposal Facility Owners and/or Operators have been, and will continue to be, in violation of the M&RP requirements each day they operate with an inadequately developed, implemented, and/or revised M&RP. Every day that the Mountain Disposal Facility Owners and/or Operators conduct operations with an inadequately developed, implemented, and/or revised M&RP, is a separate and distinct violation of the Storm Water Permit and the Clean Water Act. These violations are ongoing and Waterkeeper will update the number of violations throughout this enforcement action. The

Notice of Violation and Intent to File Suit
October 8, 2013
Page 15 of 18

Mountain Disposal Facility Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring since at least October 8, 2008.

### F.  Failure to Comply with the Storm Water Permit's Reporting Requirements

Section B(14) of the Storm Water Permit requires a permittee to submit an Annual Report to the Regional Board by July 1 of each year. The Storm Water Permit, in relevant part, requires that the Annual Report include the following: 1) a summary of visual observations and sampling results, 2) an evaluation of the visual observation and sampling and analysis results and the laboratory reports; and 3) the Annual Comprehensive Site Compliance Evaluation Report. Section B(14). As part of the Annual Comprehensive Site Compliance Evaluation Report ("ACSCE Report"), the facility operator shall review and evaluate all of the BMPs to determine whether they are adequate or whether SWPPP revisions are needed. *See* Storm Water Permit, Section A(9). The Annual Report shall be signed and certified by a duly authorized representative, under penalty of law that the information submitted is true, accurate, and complete to the best of their knowledge. *See* Storm Water Permit, Sections B(14), C(9), and C(10). The facility operator must report any noncompliance at the time that the Annual Report is submitted, including 1) a description of the noncompliance and its cause, 2) the period of noncompliance and, if the noncompliance has not been corrected, the anticipated time it is expected to continue, and 3) steps taken or planned to reduce and prevent recurrence of the noncompliance. Storm Water Permit, Section C(11)(d).

The Mountain Disposal Facility Owners and/or Operators fail to submit Annual Reports that comply with the Storm Water Permit reporting requirements. For example, the 2008-2009, 2009-2010, 2010-2011, and 2012-2013 Annual Reports were not signed, in violation of Section B(14) of the Storm Water Permit. Further, in the 2009-2010, 2010-2011, and 2011-2012 Annual Reports for the Facility, the Mountain Disposal Facility Owners and/or Operators stated that they did not certify compliance with the Storm Water Permit. Although a description of this noncompliance was included in the 2010-2011 and 2011-2012 Annual Reports (but not the 2009-2010 Annual Report), no information was included regarding any steps taken or planned to prevent the recurrence of this noncompliance, in violation of Section C(11) of the Storm Water Permit. The Mountain Disposal Facility Owners and/or Operators were required to also state and describe their noncompliance with the Storm Water Permit in the Facility's 2008-2009 and 2012-2013 Annual Reports, given the Storm Water Permit violations during these Wet Seasons described above, and the failure to do so is also a violation of Sections C(11) of the Storm Water Permit. This step is crucial to ensuring future compliance with the Storm Water Permit and preventing recurring noncompliance, as has now happened at the Mountain Disposal Facility since at least the 2008-2009 Wet Season.

Further, as described above, the forms submitted to record the facility operator's visual observations of the Facility's discharge points and non-storm water discharges were not always submitted or, when they were submitted, were incomplete. Thus, the Mountain Disposal Facility Owners and/or Operators have never included an adequate summary of visual observations or evaluation of the visual observation results. Similarly, none of the Facility's Annual Reports include any summary or evaluation of the sampling and analysis results. Such an evaluation is

Notice of Violation and Intent to File Suit
October 8, 2013
Page 16 of 18

critical to improving the Facility's storm water pollution management. Finally, the ACSCE Report was not included in the 2008-2009, 2009-2010, or 2012-2013 Annual Reports for the Facility. These missing or incomplete portions of the Annual Report are violations of Section B(14) of the Storm Water Permit. Finally, the Mountain Disposal Facility Owners and/or Operators did not submit their 2008-2009 and 2009-2010 Annual Reports by July 1, as confirmed by two Notices of Noncompliance from the Regional Board to the Mountain Disposal Facility Owners and/or Operators, in violation of the Storm Water Permit.

Each of the failures to report as required discussed above is a violation of the Storm Water Permit, and indicates a continuous and ongoing failure to comply with the Storm Water Permit's reporting requirements. Every day that the Mountain Disposal Facility Owners and/or Operators operate the Mountain Disposal Facility without reporting as required by the Storm Water Permit is a separate and distinct violation of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). The Mountain Disposal Facility Owners and/or Operators have been in daily and continuous violation of the Storm Water Permit's reporting requirements every day. These violations are ongoing and Waterkeeper will update the number of violations throughout this enforcement action. The Mountain Disposal Facility Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act since at least October 8, 2008.

## IV.  RELIEF AND PENALTIES SOUGHT FOR VIOLATIONS OF THE CLEAN WATER ACT

Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Clean Water Act subjects the violator to a penalty for all violations occurring during the period commencing five years prior to the date of a notice of intent to file suit letter. These provisions of law authorize civil penalties of up to $32,500 per day per violation for all Clean Water Act violations between March 15, 2004 and January 12, 2009, and $37,500 per day per violation for all Clean Water Act violations after January 12, 2009. In addition to civil penalties, Waterkeeper will seek injunctive relief preventing further violations of the Clean Water Act pursuant to Sections 505(a) and (d), 33 U.S.C. § 1365(a) and (d), declaratory relief, and such other relief as permitted by law. Lastly, pursuant to Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), Waterkeeper will seek to recover its costs, including attorneys' and experts' fees, associated with this enforcement action.

Notice of Violation and Intent to File Suit
October 8, 2013
Page 17 of 18

## V.    CONCLUSION

Waterkeeper is willing to discuss effective remedies for the violations described in this Notice Letter. However, upon expiration of the 60-day notice period, Waterkeeper will file a citizen suit under Section 505(a) of the Clean Water Act for the Mountain Disposal Facility Owners' and/or Operators' violations of the Storm Water Permit. Please direct all communications to Waterkeeper's legal counsel:

> Daniel Cooper
>     daniel@lawyersforcleanwater.com
> Layne Friedrich
>     layne@lawyersforcleanwater.com
> Lawyers for Clean Water, Inc.
> 1004-A O'Reilly Avenue
> San Francisco, California 94129
> Tel: (415) 440-6520

Sincerely,

Garry Brown
Executive Director
Orange County Coastkeeper

Notice of Violation and Intent to File Suit
October 8, 2013
Page 18 of 18

## SERVICE LIST

<u>VIA U.S. MAIL</u>

Gina McCarthy
Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Jared Blumenfeld
Regional Administrator
U.S. Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, California 94105

Thomas Howard
Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812

Kurt Berchtold
Executive Officer
Santa Ana Regional Water Quality Control Board
3737 Main Street, Suite 500
Riverside, California 92501

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Virginia A. Phillips_____ and the assigned Magistrate Judge is _____David T. Bristow_____ .

The case number on all documents filed with the Court should read as follows:

### EDCV14-00072 JGB (DTBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____January 13, 2014_____
Date

By _____L. Murray_____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| ☐ Western Division | ☐ Southern Division | ☒ Eastern Division |
|---|---|---|
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

CV-18 (08/13)                        NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

INLAND EMPIRE WATERKEEPER, a program of Orange County Coastkeeper; ORANGE COUNTY COASTKEEPER, a California non-profit corporation

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

BURRTEC WASTE GROUP, INC., a California corporation; BURRTEC WASTE INDUSTRIES, INC., a California corporation, MOUNTAIN DISPOSAL SERVICES, INC., a California corporation

**(b)** County of Residence of First Listed Plaintiff   Riverside
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   San Bernardino
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.
Daniel Cooper (Bar No. 153576)
Lawyers for Clean Water, Inc.
1004A O'Reilly Avenue, San Francisco, California, 94129
(415) 440-6250

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
33 U.S.C. §§ 1251 et seq. (Clean Water Act); discharges of pollutants in violation of the Clean Water Act and California Permit for Discharges of Stormwater Associated with Industrial Activities

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Com-modities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☒ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**   Case Number:

CV-71 (11/13)                    CIVIL COVER SHEET                    Page 1 of 3

ED CV 14 - 00072  JGB

JAN 13 2014  (DTBx)

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No | ☐ Los Angeles | Western |
| If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | **A PLAINTIFF?** Then check the box below for the county in which the majority of DEFENDANTS reside. | **A DEFENDANT?** Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| ☐ Yes  ☒ No | ☐ Los Angeles | ☐ Los Angeles | Western |
| If "no," go to Question C.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |

**C.1. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2. Is either of the following true? If so, check the one that applies:**

☒ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | **EASTERN DIVISION** |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court** and dismissed, remanded or closed?  ☒ NO   ☐ YES

If yes, list case number(s):

**IX(b). RELATED CASES:** Have any cases been previously filed **in this court** that are related to the present case?  ☒ NO   ☐ YES

If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**   *Caroline Koch*   DATE: *12/16/2013*

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |